RHODES PHARMACAL CO., Inc. v. FEDERAL TRADE COMMISSION.

No. 10748.

United States Court of Appeals Seventh Circuit.

Nov. 3, 1953.

Rehearing Denied Jan. 5, 1954.

See also 7 Cir., 191 F.2d 744.

Frank E. Gettleman, Arthur Gettleman, Edward Brodkey, Chicago, Ill., for petitioner.

Earl W. Kintner, Gen. Counsel, Robert B. Dawkins, Asst. Gen. Counsel, Donovan Divet, Sp. Atty., Washington, D. C., for respondent.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

Petitioners ask us to review and set aside an order entered on October 3, 1952, by the Federal Trade Commission against petitioners, requiring them to cease and desist from making certain

claims and representations in commerce in advertising their drug product "Imdrin."

Each tablet of Imdrin contains 1.9 grains acetylsalicylic acid, 1.5 grains manganese salicylate, 2.3 grains calcium succinate (anhydrous), 0.16 grain caffeine, 1 mg. thiamine chloride. Directions were: "Two tablets before each meal with water."

Petitioners have been engaged in an extensive advertising campaign by means of radio announcements and large advertisements in newspapers and magazines. The first line in the printed ads usually contains the statement printed in large bold type, "Amazing New Discovery for Rheumatism, Arthritis," followed by a subhead, "Hospital Tested. Stops Swelling, Uncorks Joints, Contains Sensational New Research Discovery." The ads usually contain pictures of men and women with faces or bodies apparently contorted with pain, and further down in the ad, under headings such as, "Resume Confident Pain-Free Living With Amazing New Imdrin," would appear pictures of men and women bowling or golfing, and apparently vibrant with good health. Some of the advertisements used by petitioner and which were described by the Commission in its findings are:

" * * * Persons whose cases of suffering have been thought almost hopeless * * * yes, even people who had suffered and hoped for twenty years, were able to live free of pain * * * like happy human beings once again. No other medicine for rheumatism and arthritis thus far discovered by medical science has such an amazing record * * *."

"Don't needlessly suffer crippling pains—untold agony and torture experienced by sufferers of arthritis, rheumatism, lumbago, neuralgia and all of the other similar miserable ailments. Now blessed relief may be yours. Imdrin tablets—the wonder prescription—acts immediately—decisively—brings marvelous freedom from pain. * * *"

And in its advertising by radio, various announcers said:

"Imdrin * * * the brand-new, safe and reliable way to cure pain that's being prescribed by many doctors to bring quick, pleasant relief from arthritis, pain, stiffness, and swelling."

"Stiffness and swelling disappear * * * often overnight."

"You've read about the wonders of sulfa and penicillin. But you may never before have heard about I-m-d-r-i-n, Imdrin, the brand-new safe and reliable way to curb pain that is being prescribed by many doctors to bring quick, blessed relief from arthritic pain, stiffness and swelling. Imdrin contains a remarkable research discovery * * * that not only stops pain, helps reduce swelling, but acts to uncork the joints. Thus clinical reports prove that people who have suffered from arthritis, sciatica, rheumatism, and neuritis up to 20 years have been eased of pain often in 48 hours, sometimes overnight * * *. Users of Imdrin report that they have resumed normal living. For them the aching joints and muscles are a thing of the past. Profit by the experience of many others. Get Imdrin * * * from your druggist today. * * *"

The Commission found that the terms "arthritis" and "rheumatism" are general terms used interchangeably to refer to a large number of diseases or pathological conditions including, among others, neuritis, sciatica, neuralgia, gout, fibrositis, bursitis, rheumatoid arthritis, osteoarthritis, rheumatic fever and infectious arthritis, all of which are characterized by one or more of such symptoms as pain, stiffness, and inflammatory changes in the joints and tissues of the body; that different conditions referred to as arthritis and rheumatism have different causes, and that not all muscular aches and pains are rheumatic; that different treatment is required for different types of rheumatism and arthritis; that the various kinds of arthritis and rheumatism do not respond to the same treatment; that effective and reliable

treatment for any kind of arthritis or rheumatism must be predicated upon individual diagnosis. The Commission also found, "Delay of needed treatment may result in irreparable crippling, especially in those forms of arthritis and rheumatism known to be caused by specific infections."

The Commission also found, "The thiamine chloride, which is a vitamin, contained in * * * 'Imdrin' is insufficient in amount to have any beneficial effect in the treatment of a patient suffering from neuritis due to thiamine deficiency. The calcium succinate content of such preparation has no significant therapeutic value in the treatment of arthritic or rheumatic conditions, nor does it affect the functioning of the enzyme system of the blood or bones * * *. The caffeine content of Imdrin has no significant therapeutic value in the treatment of any form of arthritis or rheumatism. The only ingredients contained therein which possess active analgesic properties are manganese salicylate and acetylsalicylic acid, the use and effect of which, as analgesics and antipyretics, have been known for many years. Acetylsalicylic acid has for many years been sold throughout the United States as an analgesic under the name 'aspirin.' The analgesic effect of these salicylates, in the amount contained in the drug preparation 'Imdrin,' upon the aches, pains and discomforts of arthritic or rheumatic conditions is limited and temporary."

The Commission found that petitioners had represented (1) that Imdrin, when taken as directed, constitutes an adequate, effective and reliable treatment for, and will arrest the progress and correct the underlying causes of all forms of rheumatism, and arthritis, including neuritis, sciatica, neuralgia, gout, fibrositis and bursitis, and that said preparation will cure all forms of such diseases or afflictions; (2) that Imdrin, when taken as directed, constitutes an adequate, effective and reliable treatment for the symptoms and manifestations of all of the above-named diseases or afflic-

tions, and will afford complete, permanent relief from the aches, pains and discomforts thereof; (3) that Imdrin is a remarkable, amazing, sensational new discovery of scientific research; (4) that by taking Imdrin as directed persons suffering from any of the above-named diseases or afflictions will be enabled to resume their normal habits of life and their regular occupations; (5) that the taking of Imdrin as directed will correct any disturbance of the vital enzyme system of the blood and bones, and will insure adequate functioning thereof.

The Commission then found that Imdrin will not constitute an adequate, effective, or reliable treatment for any arthritic or rheumatic condition nor will it arrest the progress, or correct the underlying causes, or effect a cure of any of such conditions; that Imdrin, however taken, will not ameliorate the aches, pains and discomforts of any arthritic or rheumatic condition to any extent beyond the temporary and partial relief thereof afforded by its salicylate content as an analgesic and antipyretic; further that Imdrin has no significant effect upon severe aches, pains and discomforts accompanying any arthritic or rheumatic condition, and will afford temporary and partial relief of only minor aches, pains and discomforts, and that it will not correct disturbances nor insure adequate functioning of the enzyme system of the blood or bones.

The Commission found that petitioner's representations in its advertisements of Imdrin were false and misleading in material respects and had the capacity and tendency to and did mislead and deceive a substantial portion of the purchasing public, and that same constituted false advertisements within the meaning of the Federal Trade Commission Act.

The order of the Commission, which we are asked to review, requires the petitioners to cease and desist from disseminating advertisements as to Imdrin representing (a) that the taking of said preparation is an adequate, effective, or reliable treatment for neuritis, sciatica,

gout, neuralgia, fibrositis, or bursitis, or any other kind of arthritic or rheumatic condition; (b) that Imdrin will arrest the progress or correct the underlying causes of, or will cure, the conditions listed in (a); (c) that Imdrin will afford any relief of severe aches, pains, and discomforts of conditions named in (a) or have any therapeutic effect upon any of the symptoms or manifestations of any such condition in excess of affording temporary and partial relief of minor aches, pains or fever; (d) that Imdrin is remarkable, amazing or sensational or is a sensational new discovery of scientific research, or a new discovery; (e) that persons afflicted with conditions listed in (a) so severely that such afflictions interfere with their normal habits of life will be enabled, by taking. Imdrin, to resume such normal habits or regular occupations; and (f) that the taking. of Imdrin will have any therapeutic effect upon the functioning of the enzyme system of the blood or bones.

Petitioners urge that there is no substantial evidence in the record for the Commission's finding that they represented that Imdrin constituted an adequate, effective and reliable treatment for all forms of arthritis and rheumatism. They point out that they never used the word "cure" in their advertisements and assert that their product was offered to the public only as a relief from pain. It is apparent they made an effort to avoid the use of the word "cure" although one radio advertisement stated, "In a moment I'll be back to tell you folks who have been suffering from arthritis, sciatica, rheumatism and neuritis, news about Imdrin * * * the Brand-new, safe and reliable way to cure pain that's being prescribed by many doctors to bring quick, pleasant relief from arthritis pain, stiffness, and swelling." Furthermore, in other ads petitioners often included descriptions of situations which, to many potential users, might well imply a cure, such as: "Imdrin * * * brings marvelous freedom from pain," and "For them (users

of Imdrin) the aching joints and muscles are a thing of the past," which would lead such persons to believe or hope that Imdrin would effect a cure of their previously existing condition. Again petitioners asserted in their ads, "Amazing New Discovery for Rheumatism, Arthritis." They did not confine themselves to asserting that Imdrin was for relief of pains or aches from rheumatism or arthritis. In several instances the courts have held that a representation that a preparation is to be used "for" a disease is equivalent to labeling it a cure or remedy for such disease. Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165, 168; Hall v. United States, 5 Cir., 267 F. 795, 798.

Petitioners place great reliance upon a survey conducted for them by one Breiman, who interviewed 300 people in New York City, to each of whom he showed three of petitioners' advertisements (Exhibits Nos. 6, 8 and 13), and asked two questions: "Do these ads mean that Imdrin will provide relief of pain of arthritis or rheumatism?" or "Do these ads mean that Imdrin will provide treatment and cure for arthritis and rheumatism?" He reported that approximately 91% of those interviewed stated that the advertisements meant Imdrin would provide relief from pain, while approximately 9% stated that they meant that Imdrin would provide treatment and cure of arthritis and rheumatism. Petitioners insist that this survey provided the only reliable evidence of consumer reaction, against which, they claim, opinions and inferences cannot prevail.

Theoretically a sound method of ascertaining the meaning of petitioners' advertisements to the consuming public would be to interview potential customers and ascertain what those ads meant to them. A survey of the attitude of dentists toward a drug preparation was considered by the court in Bristol-Myers Co. v. Federal Trade Commission, 4 Cir., 185 F.2d 58, 60. The government offered a survey of consumer reaction in United States v. 88 Cases, More or Less,

Containing Bireley's, etc., 3 Cir., 187 F. 2d 967, 974. The testimony of witnesses drawn from the general public, as to the impressions made upon their minds upon reading the advertisements, was admissible. This procedure of investigation has received the sanction of the courts. Gulf Oil Corp. v. Federal Trade Commission, 5 Cir., 150 F.2d 106, 108; Stanley Laboratories, Inc., v. Federal Trade Commission, 9 Cir., 138 F.2d 388, 391; Ford Motor Co. v. Federal Trade Commission, 6 Cir., 120 F.2d 175, 182.

Obviously the value of a survey depends upon the manner in which it was conducted—whether the techniques used were slanted or fair. For instance, the Commission here contends that the form of, and the manner of asking the questions excluded the possibility of potential consumers answering that the advertisements made representations both as to treatment and cure, as well as to provide relief from pain.

In Quaker Oats Co. v. General Mills, 7 Cir., 134 F.2d 429, 433, we stated that all the evidence obtained in that case by the surveys could be disregarded and the plaintiff would still prevail. However, we did not say then, and we do not say now, that evidence obtained as a result of a survey is of no probative value.[1] We recognize that the rule is well established that evidence which would be excluded in an ordinary lawsuit may, under many circumstances, be received on hearings before an administrative agency. The Supreme Court has stated, " * * * technical rules for exclusion of evidence applicable in jury trials do not apply to proceedings before federal administrative agencies in the absence of a statutory requirement that such rules are to be observed." Opp Cotton Mills, Inc., v. Administrator of the Wage and Hour Division, etc., 312 U.S. 126, 155, 61 S.Ct. 524, 537, 85 L.Ed. 624. See also: Stanley Laboratories v. Federal Trade Commission, 9 Cir., 138 F.2d 388, 392.

The important question to be resolved is the impression given by an advertisement as a whole. Advertisements which are capable of two meanings, one of which is false, are misleading. United States v. 95 Barrels, etc., of Vinegar, 265 U.S. 438, 442, 44 S.Ct. 529, 68 L.Ed. 1094. Advertisements which create a false impression, although literally true, may be prohibited. Koch v. Federal Trade Commission, 6 Cir., 206 F.2d 311; Consolidated Book Publishers v. Federal Trade Commission, 7 Cir., 53 F.2d 942, 944. The Federal Trade Commission Act provides, " * * * and in determining whether any advertisement is misleading, there shall be taken into account * * * representations made or suggested * * *." 15 U.S.C.A. § 55(a).

The meaning of advertisements to the public and their capacity to deceive are questions of fact for the Commission to determine, and its conclusions may not be disturbed unless arbitrary or clearly wrong. Gulf Oil Corp. v. Federal Trade Commission, supra. Applicable here is our statement in Zenith Radio Corp. v. Federal Trade Commission, 7 Cir., 143 F.2d 29, 31, "The Commission had a right to look at the advertisements in question, consider the relevant evidence in the record that would aid it in interpreting the advertisements, and then decide for itself whether the practices engaged in by the petitioner were unfair or deceptive, as charged in the complaint."

We think the findings of the Commission are supported by substantial evidence. We agree with the conclusions of the Commission that petitioners were engaged in unfair and deceptive practice in commerce. We think that the cease and desist order should be enforced in the manner proposed, with the exception of sub-section (c) which should be modified. Orders of the Commission, which we are called upon to enforce, must not be indefinite or am-

[1.] See interesting discussion in 66 Harv.Law Rev. 498, "Public Opinion Surveys as Evidence: The Pollsters Go to Court."

biguous. Dr. W. B. Caldwell v. Federal Trade Commission, 7 Cir., 111 F.2d 889, 891. Under Paragraph 1(c) the petitioners are restrained from representing "that said preparation will afford any relief of severe aches, pains, and discomforts of neuritis, sciatica, gout, neuralgia, fibrositis, bursitis, or any other arthritic or rheumatic condition, or have any therapeutic effect upon any of the symptoms or manifestations of any such condition in excess of affording temporary and partial relief of minor aches, pains, or fever." Thus the representations that Imdrin will afford any relief of severe aches, pains and discomforts is prohibited, but permission is given to represent that it would afford temporary and partial relief of minor aches, pains or fever.

In Carter Products, Inc., v. Federal Trade Commission, 7 Cir., 186 F.2d 821, 826, we stated, " * * * this court in D. D. D. Corp. v. Federal Trade Commission, [7 Cir., 125 F.2d 679] * * * disapproved of the use of the word 'temporary' because of its very uncertain meaning. We pointed out that it might mean only a few minutes, yet experts testifying before the Commission in this case admitted that Arrid's deodorant properties are effective at least three to six hours. We think in the case at bar, as we did in the D. D. D. case, that protection of the public does not require petitioners to use the word 'temporary' or 'temporarily,' and that to require its use would be unfair to the petitioners in representing the truth as to Arrid." In D. D. D. Corp. v. Federal Trade Commission, 7 Cir., 125 F.2d 679, 682, we said, "We are also of the view that the word 'temporary' as used in * * * the Commission's order should be eliminated. We see no reason why petitioner should not be permitted to represent its product as a relief for itching. It does not cure either the itch or its cause, but it does afford relief. * * * The word 'temporary' carries an uncertain meaning."

It was overwhelmingly established in the case at bar that Imdrin affords relief for the pain and discomfort incident to many rheumatic and arthritic conditions. The duration of time that such relief was afforded differed with the individuals who used Imdrin. It was just as firmly established that Imdrin would not furnish permanent relief or effect a cure of rheumatic or arthritic conditions. Petitioners should be permitted to represent the truth, but be required to refrain from making the highly exaggerated claims which they have heretofore made. The five sections of the order which we approve will very largely correct the misleading and deceptive representations which petitioners have made in their advertisements.

Paragraph 1(c) of the cease and desist order will be modified to read:

"(c) that said preparation will afford any permanent relief of aches, pains, and discomforts of neuritis, sciatica, gout, neuralgia, fibrositis, bursitis, or any other arthritic or rheumatic condition, or effect a cure of the symptoms or manifestations of any such condition."

As hereinbefore indicated, the cease and desist order is affirmed, and the enforcement thereof, as modified, is ordered.