354

·and (3) in *Eastern Sugar Associates* v. *Sugar Board*, No. 3, decided today, we find no constitutional infirmity in the said provision.

EASTERN SUGAR ASSOCIATES (*a Trust*), Petitioner, *v.* SUGAR BOARD OF PUERTO RICO, Respondent.

No. 3. Argued July 20, 1953.—Decided November 5, 1954.

356

*Fiddler, González & Nido* for petitioners. *José Trías Monge,*
• *Attorney General, A. Torres Braschi, Assistant Attorney General, José E. de Guzmán* and *Federico Rodríguez Gelpí* for the respondent Board.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

Eastern Sugar Associates, who operate sugar mills, filed this petition under § 33 of the Sugar Act of Puerto Rico —Act No. 426, Laws of Puerto Rico, 1951—to review Rule No. 2 of the Sugar Board which provides that the participation of colonos in the product of their cane shall be in money, except when the colonos elect to receive sugar.[1] The Asso-

---

[1] Rule No. 2, approved October 16, 1952, reads in part as follows:

"Section I.—Except for those cases covered by Section II of this Rule, the central shall liquidate in cash to its colonos their participation in the product of their cane, in accordance with the provisions of the Sugar Act and of Rule No. 1 of the Sugar Board.

"Section II.—The colonos shall have the option to have their participation in the product of their cane liquidated *in sugar and when any colono* before December 1 prior to the beginning of the grinding season so notifies the central, the latter shall be obliged to liquidate his participation in sugar, in accordance with the provisions of Section 7 of the Sugar Act."

Section III provides that if the colono notifies the central after December 1 before the beginning of the crop season that he wishes to liquidate in sugar, the central is not required to but may if it desires liquidate in sugar. Section IV provides that when a colono has not notified the central that he wishes to liquidate *in sugar and the central makes his* first liquidation in sugar, the colono shall have the right to refuse to accept the said liquidation and to demand liquidation in cash. Section V provides that if a colono who has not notified the central that he wishes to

ciates make four principal contentions: (1) Rule No. 2 is in conflict with Act No. 426, particularly § 7; (2) if it is not, Rule No. 2 and § 7 deprive the Associates of their property and liberty to contract without due process of law; (3) the hearing held in connection with the adoption of Rule No. 2 was defective; (4) two Exhibits were erroneously admitted in evidence at the said hearing.

 We examine first the argument of the Associates that Rule No. 2 is in conflict with Act No. 426, particularly § 7.[2] In making this contention, the Associates rely on the terms of both § § 7 and 5. The first sentence of § 5 speaks of " . . . the share belonging to each *colono* of the sugar and molasses produced from his cane . . . "; Part I-A of § 5 also refers to the " . . . share of sugar pertaining to the

---

liquidate in sugar accepts without objection his first liquidation·in sugar, this constitutes tacit acceptance of the system of liquidation in sugar for that crop. Section VI provides that if the colono elects to liquidate in sugar, he and the central may by agreement constitute the central his agent for sale of his sugar. Section VII is a separability clause.

Section 7 of Act No. 426 provides that liquidation to colonos in cash shall be made fortnightly or monthly by the central on the basis of the price of sugar "...corresponding to the fortnight or month in which the cane has been delivered." However, § 7 provides that "...the Board may, after a hearing of all the interested parties, provide another system of liquidation which may be fair and reasonable." Pursuant to the latter provision, the Board after a hearing promulgated Rule No. 1, which was approved by the Governor on March 18, 1952. Rule No. 1 provides that liquidation in cash for colonos shall be on the basis of the average price of sugar during the ten-month period from January 1 to October 31 of the crop in which the cane is ground. The change from a fortnightly or monthly period as provided in § 7 to a ten-month period was made by the Board to conform to the requirement of the Sugar Determination of the Secretary of Agriculture of the United States, dated December 29, 1951. 17 Fed. Reg. 139. Compliance with the Secretarial Determination qualifies a processor-producer like the Associates for benefit payments under the Federal Sugar Act. In the same way and for the same reason by Rule 4, approved February 11, 1954, the Board changed the period used to calculate the average price to the period from March 1 of the crop in which the cane is ground to February 28 of the following year, see 18 Fed. Reg. 8887 for the Secretarial Determination of December 24, 1953.

[2] Section 7 of Act No. 426 reads as follows:

"The provisional liquidations of sugar pertaining to the *colonos* shall be made fortnightly or monthly by the central, as may be determined by the Board, or in default thereof, for the liquidation period used during the

*colono* . . . ". According to the Associates, this language . means that it is the sugar itself which belongs to the colonos, not the cash proceeds of the sale of the sugar. And they assert that this contrasts with the provision in Part II of § 5 that the share of the colono as to molasses shall be in "the value"—that is, the cash proceeds—of the molasses. The explanation of the Associates for this alleged difference in § 5 in the treatment of molasses and sugar is. that historically for the former the colonos have always received cash, not molasses; on the other hand, some mills have liqui-

next preceding year, taking as the value of the sugar, for its liquidation, the average price of the sugar of Puerto Rico paid C.I.F. New York corresponding to the fortnight or month in which the cane has been delivered. Of the average prices of the sugar of Puerto Rico of 96 degrees of polarization in the New York market, determined as above prescribed, the central may deduct the sums it may deem necessary to cover shipment and marketing expenses in all the cases of such *colonos* as may not choose to receive their share in sugar as hereinafter provided; *Provided,* That whenever the *colono* believes that the sum deducted by the central for such reasons is excessive, he may request the Board to fix the sum which the central shall provisionally deduct for such purposes, and the Board is hereby empowered to do so; *Provided, further,* that the Board may, after a hearing of all the interested parties, provide another system of liquidation which may be fair and reasonable.

"Whenever the *colono,* before December 1 prior to the beginning of the grinding season, so notifies the central, the latter shall be bound to deliver the total amount of sugar of 96 degrees pertaining to him in accordance with this Act and the regulations promulgated hereunder.

"The *colonos* who choose that their share of the proceeds of their cane be liquidated in sugar, shall enjoy the right of storage in the warehouses of the central until the 31st day of December following the grinding season during which said sugar was produced, without payment of any amount whatsoever for the enjoyment of said right.

"The central shall guarantee the *colonos* two hundred and fifty (250) pounds of sugar of 96º per each bag delivered to purchasers up to the 31st day of October following the grinding season during which the *colono's* sugar was produced. Any amount in dollars resulting in excess of said guarantee, due to any difference in weight or polarization, shall inure to the benefit of the central. Any amount in dollars in default of said guarantee, due to any difference in weight or polarization, shall be reimbursed to the *colonos* by the central. In both cases, said readjustment payments shall be made in cash and not in sugar.

"The central shall deliver sugar to the *colonos* in new bags of two hundred and fifty (250) pounds net each, and in case the central is compelled to use old bags, it shall compensate the colonos for the penalty imposed on the sugar due to the use of said old bags."

dated the share of the sugar corresponding to the colono in money while other mills have liquidated in sugar.

The Associates concede that the first sentence of § 7 refers to liquidation in money. As they point out, " . . . otherwise there would be no occasion to speak about the c.i.f. price in New York." The Associates argue, however, that this first sentence " . . . does not state, nor imply, that liquidations *must* be made in cash." And they add: "The second sentence continues speaking of liquidations which are made in cash but makes an exception of the cases of colonos who may not choose to receive their share of sugar '*as hereinafter provided*'. It is obvious by the express use of the words 'as hereinafter provided' that the statute is speaking only of those cases where the colono, before December 1st, *elects to receive sugar in kind.*"

The Associates conclude from the foregoing that " . . . what the statute provides is that where the customary method of liquidation is in cash, the colono, by making an election on December 1st, can require that liquidation be made in kind *rather than in cash. Nowhere is it said directly or by implication that where the custom is to liquidate in sugars the colono has the option at any time of requiring liquidation in cash.* . . . Whether or not the colono may require liquidation in sugars where the custom is to liquidate in cash, is of course, of no interest to Eastern Sugar Associates because Eastern Sugar Associates insist and always have insisted on liquidating in sugars and not in cash. A central which customarily liquidates in cash might, of course, well object to being forced to liquidate in sugars at the colono's election."

The Associates conclude their argument on this point by asserting that the foregoing ". . . would seem to be the more reasonable interpretation even if the meaning were not entirely clear." They state in their brief: "Article 7 of the statute provides that when liquidations are made in cash the

liquidations must be made at the fortnightly or monthly price at the time of production. The colono who is liquidated in cash had no opportunity to take advantage of higher prices in the latter part of the year. When liquidations are made in sugar, however, the colono can sell at any time of the year and take advantage of the higher market in the fall whereas under the cash liquidation system, the processor has the opportunity to make this speculative gain with the sugars acquired from colonos." [3]

We disagree with the Associates as to the meaning of § 7. We cannot follow their reasoning that § 7 permits a colono to elect liquidation in kind if he has previously liquidated in cash, but that it does not authorize the colono to elect liquidation in money if he has in the past liquidated in sugar. On the contrary, we think § 7 provides for liquidation in cash unless the colono elects to receive sugar, irrespective of the previous practice of the particular mill.

We do not agree with the Associates that § 5 treats the share of the colono as to sugar and molasses differently. In the first sentence of § 5 they are referred to in exactly the same manner: the statute speaks of " . . . the share belonging to each *colono* of the sugar and molasses produced from his cane . . . ". No reference is made there to the participation of the colono in the value, or cash proceeds, of the molasses. Also, sugar and molasses are treated in the same way in the *It being understood* clause of the first paragraph of § 5. Obviously, both the phrases relied on by the Associates and those cited in this paragraph were, for present purposes, used somewhat loosely in § 5 and were not intended to have any effect on the problem before us. Moreover, § 5 is not primarily concerned with liquidation as such with reference to the colono; it deals principally with the

---

[3] However it should be noted that under Rule No. 1 of the Board the colono who liquidated in cash was paid on the basis of the average price over a ten-month period, and not the fortnightly or monthly price when the cane was ground, as originally provided in § 7. Rule 4 extended this period to twelve months. See footnote 1.

participation corresponding to the colono. As to liquidation, the chief role is played by § 7. *Antonio Roig Sucrs. v. Sugar Board*, decided today.[4]

The decisive provisions of Act No. 426, for purposes of the question before us, are found in § 7. The Associates concede, as already noted, that the first sentence in the first paragraph of § 7 contemplates liquidation in cash. The second sentence in the first paragraph of § 7 reads ·in part as follows: "Of the average prices of the sugar of Puerto Rico . . . the central may deduct the sums it may deem necessary to cover shipment and marketing expenses in all the cases of such *colonos as may not choose* to receive their share in sugar as hereinafter provided . . . ". (Italics ours). The second paragraph of § 7 provides that whenever the colono, before December 1 prior to the beginning of the grinding season, *so notifies the central*, the latter must deliver to the colono the total amount of sugar to which he is entitled under the Act and the regulations. The third paragraph of § 7 gives the right of free storage in the warehouse of the central to the colonos "...*who choose that their share of the proceeds of their cane be liquidated in sugar* . . . ". (Italics ours). We find nothing in the above-quoted or the other provisions of § 7 which supports the contention of the Associates that the election between the two methods of liquidation is granted only to those colonos who have previously liquidated in money. On the contrary, although the language on this question may seem somewhat periphrastic, we agree with the Board that § 7 read as a whole provides basically for liquidation in cash but gives the colono the choice of receiving his share in sugar.[5]

---

[4] For the reasons noted, we cannot agree with the petitioner in *Antonio Roig Sucrs., S. en C., South Porto Rico Sugar Co., Central San Vicente, Inc. v. Sugar Board*, decided today on the basis of this opinion, that the phrase "en pago de éstas" in the Spanish version of § 5 tends to show that the colono is entitled to liquidate only in sugar. See footnote 17 of *Antonio Roig Sucrs. v. Sugar Board*, decided today.

[5] It is worth noting that the meaning ascribed to § 7 by the Associates would raise a serious question as to discriminatory treatment: mills which

The Associates argue that Rule No. 2 is in conflict with § 7 of Act No. 426 insofar as Rule No. 2 provides that liquidation is in cash unless the colono elects to receive sugar. This contention is based on the premise that § 7 does not give the colono the choice of liquidating in cash where the central, as in this case, has previously liquidated in sugar. But we have rejected this premise and have concluded that even under the latter circumstances liquidation under § 7 is in cash unless the colono elects to liquidate in sugar. It follows that the contention of the Associates that Rule 2 is in conflict with § 7 is without merit.

The next point of the Associates is that § 7 of Act No. 426 as construed by us and Rule 2, in providing that the mill must liquidate in cash unless the colono elects to receive sugar, deprive them of their property and liberty of contract without due process of law.[6] In two cases decided by us today centrals assailed the validity of provisions of § 6 —§ 6 (c) providing for free portable tracks and the payment of 5¢ per ton of cane as hauling expenses; § 6 (a) providing for free hoisting service at points of delivery—on the ground that they violate due process. We upheld these provisions (1) because §§ 5, 6, and 7, when read together with the rest of Act No. 426, provide an integrated regulation of the sugar business in Puerto Rico on an over-all basis; and (2) because no testimony was adduced in those cases demon-

---

had liquidated in sugar could continue to do so, regardless of the wishes of the colonos, while centrals which had liquidated in cash would be compelled to liquidate in money or in sugar at the option of the colono. By the same token, colonos who had previously liquidated in sugar would not have the choice other colonos would have of liquidating in cash or in sugar.

[6] Except for incorporation by reference of Rule 1 which in turn is substantially the same as a provision in the Secretarial Determination of December 29, 1951, Rule 2 is in effect a restatement of § 7 of Act No. 426, with some additional details as to the method and manner of its operation which serve to implement it. See footnote 1 and our subsequent discussion as to the alleged requirement of a hearing. The attack of the Associates is fundamentally on the right of the colono to receive cash unless he elects to receive sugar. And that right, we have already held, was established by § 7 without reference to Rule No. 2.

strating that the expenses occasioned by § 6 (a) and (c), when applied together with the other terms of Act No. 426, would result in a loss or insufficient profits to the centrals involved therein. *Antonio Roig Sucrs.* v. *Sugar Board; Eastern Sugar Associates* v. *Sugar Board*, No. 2, decided today. Similarly, for the reasons stated herein and in those cases, we think the provision in § 7 that colono cane shall be liquidated in cash unless the colono elects to receive sugar does not deprive the Associates of their property without due process of law.[7]

In enacting § 7, the Legislative Assembly may well have shared the view expressed by the Board in this case that liquidation in cash is beneficial for the industry as a whole because the centrals have more facilities and other advantages to market and sell sugar than the individual colonos, particularly the small colonos, who lack the background, skill, credit and other requirements for the sale of sugar; that small colonos who liquidate in sugar obtain inferior prices therefor than they would receive in money under § 7 and Rule No. 2; that, generally speaking, liquidation in cash has been a satisfactory method in use here for years; and that if a colono possesses satisfactory means to market sugar and wishes to do so, he should be permitted to liquidate in sugar. *Cf.* Miller, *The Marketing of Sugarcane in Puerto Rico*, pp. 28–31, 43, described hereinafter in footnote 15.[8] It may well be that substantial expenses will result for the seven of the thirty-three mills in Puerto Rico which have in the

---

[7] We discuss hereinafter the problem of how the Associates might have adduced testimony on the economic impact of § 7 on their operations in this or in some other proceeding.

[8] The Board stated these views among others in its findings of fact. We hereinafter hold that it is unnecessary to determine if these findings are supported by the evidence as the Board was not required to conduct a quasi-judicial hearing and to make findings of fact in this case. In reciting them in the text at this point, we use them merely as illustrative of what the Legislative Assembly might have thought, and not as indicative of our views, as these are "entertainable economic judgments." *Secretary of Agriculture* v. *Central Roig*, 338 U.S. 604, 606, footnote 1; *Antonio Roig, Sucrs. v. Sugar Board*, decided today, footnotes 13 and 18.

past liquidated in sugar rather than in money if a considerable number of their colonos elect to receive money. But in the absence of a showing that this additional cost to the mills will result in a confiscatory participation for the Associates under Act No. 426 as a whole, we cannot find that the provision in § 7 that colonos shall receive cash unless they elect to liquidate in sugar, under the circumstances of the sugar industry in Puerto Rico, is invalid.[8a]

██ The Associates next complain (1) of the holding of the Board that the hearing in connection with the adoption of Rule 2 need not be quasi-judicial, and (2) of the manner in which the hearing was conducted. The Board published the proposed Rule No. 2 in the press and held a public hearing thereon. The Associates and other mills appeared at the hearing but offered no testimony. They presented only legal arguments. Rule No. 2 was thereupon adopted. The Associates then moved for reconsideration, alleging that a quasi-judicial hearing—with the presentation of testimony followed by findings of fact—was required for the adoption of Rule No. 2. The Board set the motion for reconsideration for a hearing for the centrals " . . . to discuss their motions, to establish their contentions and to present any oral or documentary proof deemed pertinent." At this hearing the Associates declined to present testimony. The mills involved in *Antonio Roig Sucrs., South Porto Rico Sugar Co., Central San Vicente, Inc.* v. *Sugar Board*, decided today on the basis of this opinion, and the attorney for the Board presented oral and documentary evidence. The Board denied the motion for reconsideration and entered an order which included findings of fact.

As in the case of certain other administrative agencies,

---

[8a] In this and in the other cases against the Board decided today the Associates rely among other cases on *Mayflower Farms* v. *Ten Eyck*, 297 U.S. 266, and *Thompson* v. *Consolidated Gas Co.*, 300 U.S. 55. We find nothing in the holding or language of those cases which would affect the result here. *Cf. Railroad Commission* v. *Oil Co.*, 310 U.S. 573, 583, footnote 1.

the Sugar Board is empowered by Act No. 426 to issue both general regulations and orders having an individual impact. Under § 15 the Board has the power "...to hear and decide any dispute . . . " under the Act or its regulations " . . . as well as any other dispute that may arise between *colonos* and centrals." Pursuant to this Section the Board may in appropriate cases enter orders which would be individual in their impact. In such cases, quasi-judicial hearings, followed by findings of fact, are required. See *Godreau & Co.* v. *Public Service Comm'n*, 71 P.R.R. 608, 613–4. Thereafter, a petition for review of the order of the Board may be filed under § 33 in this Court. "And where as here the statute is . . . silent on the scope of review, the courts determine only whether the administrative body erred on questions of law. However, one of the questions of law is whether the administrative record contains substantial evidence to support the findings of fact of the administrative body." *Rivera* v. *Chancellor of the University*, 73 P.R.R. 361, 365; *Rent Director* v. *District Court*, 73 P.R.R. 379, 383–4; *Hilton Hotels* v. *Minimum Wage Board*, 74 P.R.R. 628, 643; XXIII *Revista Jurídica de la U.P.R.* 350.

■ A different procedure is established for general regulations. Under § 17 the Board may prescribe regulations ". . . in connection with the liquidation, disposal, pignoration, insurance and payment of the sugar and molasses produced by the canes of the *colonos*, as well as the compensation which the *colonos* shall receive from each central for hauling and delivery." Section 21 authorizes the Board to prescribe ". . . such . . . regulations as may not be incompatible with the provisions of this Act for the proper execution hereof . . .". Section 22 provides that the regulations ". . . shall have the force of law after approved by the Governor."[9] Quasi-

---

[9] See § 5, which provides for a hearing by the Board when the latter fixes a different participation for colonos, and § 7, which provides for a hearing if the Board establishes a system of liquidation other than that fixed in § 7. The Board took the latter action in Rule No. 1. See foot-

judicial hearings and findings of fact are neither required constitutionally nor contemplated by Act No. 426 for general regulations adopted pursuant to §§ 17 and 21 and approved by the Governor under § 22. *Godreau & Co. v. Public Service Comm'n, supra,* p. 611; Davis on *Administrative Law,* 238 *et seq.;* Parker on Administrative Law, 148, 169.

■ In the light of the foregoing, we turn to the problem of whether a hearing and findings of fact were required before the Board could approve Rule No. 2. We considered a similar problem under *another statute* in the *Godreau* case. There we set forth the difference as provided in the Public Service Act and in Act No. 221 of 1942 between (1) the procedure for establishing general regulations for public utilities and (2) the procedure pursuant to which the Commission issues decisions affecting individual utilities. In the first type of case the Commission may, with the approval of the Governor, promulgate regulations without hearings or findings of fact based on testimony. "Provided the regulations are truly general, there can be no valid objection to this method of adopting them. The reason is that since general regulations are legislative in nature, the Legislature is not required to provide for a quasi-judicial hearing prior to their approval." *Godreau & Co. v. Public Service Comm'n, supra,* p. 611, and cases cited; *Bowles v. Willingham,* 321 U. S. 503, 519; *Willapoint Oysters v. Ewing,* 174 F.2d 676, 692–4 (C. A. 9, 1949), cert. denied, 338 U. S. 860. In the second type of case the Public Service Act and Act No. 221 provide for a hearing in the usual quasi-judicial form, findings of fact, and individual orders subject to review by the courts "upon the record" to determine if the order "is reasonable and in conformity with law." *Godreau & Co. v. Public Service Comm'n, supra,* pp. 613–4.

The so-called General Regulations for sugar companies, promulgated under Act No. 221, Laws of Puerto Rico, 1942,

note 1. *Cf. Godreau & Co. v. Public Service Comm'n, supra,* pp. 615–16, as to the desirability of a "general" public hearing even where not required by statute for general regulations of a legislative nature.

were issued by the Commission as though they were truly general regulations: no quasi-judicial hearing was held and there were no findings of fact based on testimony. Accordingly, we held that certain of these regulations were invalid because they were in fact individual orders requiring a hearing, findings of fact, and an order subject to judicial review. The Articles of the Regulations thus invalidated were Article 7, providing for the hauling and delivery of cane; Article 11, providing for liquidation of cane and disposition and payment of sugar; Article 12, providing for liquidation of molasses; and Article 19, providing for rates to be charged. *Godreau & Co.* v. *Public Service Comm'n, supra,* pp. 617–21.

The reasoning whereby we held in the *Godreau* case that the foregoing Regulations were invalid is inapplicable to the adoption of Rule 2 under Act No. 426 of 1951. In the first place, it does not apply because the situation has changed completely. We pointed out at pp. 617–8 of the *Godreau* case that in seeking to determine if any of the so-called General Regulations were individual rather than general, we must bear in mind that under Act No. 221 of 1942 the Commission was required to fix for the sugar companies, which were declared to be public utilities, a fair return on the fair value of their property devoted to the public service. In short, the Commission was required to treat each company as an *individual problem. Godreau & Co.* v. *Public Service Comm'n, supra,* p. 618; *Cia Azucarera Toa* v. *Public Serv. Comm'n,* 71 P.R.R. 197, 208, footnote 6. However, there has been a complete reversal of the concept that each mill is a public utility whose rate must be fixed individually. Act No. 221 of 1942 was repealed by Act No. 426 of 1951. "Under the latter the mills were no longer considered as public utilities with rates to be charged individually by each mill as fixed by the Public Service Commission. Act No. 426 reverted in substance to the method of uniform participations as found in Act No. 112 of 1937, although with a number of changes, more flexibility, and greatly expanded powers for the Sugar

Board." *Antonio Roig Sucrs.* v. *Sugar Board, ante,* p. 324, decided today. Consequently, under Act No. 426 of 1951, which treats mills uniformily, there is a considerably broader area for the promulgation of general regulations than under Act No. 221 of 1942, which declared the mills to be public utilities and required the Commission to treat each mill and its services and rates as an individual problem.

The second reason why the portion of the *Godreau* opinion invalidating certain so-called General Regulations is inapplicable here is that, even under the test laid down in that case, Rule No. 2 is a general regulation for which no quasi-judicial hearing is required. Rule No. 2—apart from incorporating Rule 1 by reference and restating the provision in § 7 of Act No. 426 that liquidation shall be in cash unless the colono elects to receive sugar—merely implements § 7 as to methods of operation. See footnote 1. We therefore think that, even under the stricter requirements of Act No. 221, Rule No. 2 would be a valid general regulation which the Board was empowered to approve without a hearing. See *Godreau & Co.* v. *Public Service Comm'n, supra,* pp. 621–5, where we held that regulations similar to Rule No. 2 were general regulations rather than individual orders. *A fortiori*, Rule 2 was a valid regulation under §§ 17, 21 and 22 of Act No. 426, which do not require a quasi-judicial hearing and findings of fact.[10]

▮▮▮▮▮ In view of our conclusion that the Board was entitled to promulgate Rule No. 2 without a hearing or findings of fact, we find it unnecessary to determine whether these findings are without support in the testimony. However, we are not to be understood as holding that in attacking Rule No. 2 or any other regulation of the Board as applied to it an interested party may not offer testimony in support of his

---

[10] Here, as in *Godreau & Co.* v. *Public Service Comm'n, supra,* p. 617, the submission of Rule No. 2 to the Governor by the Board evinces an intent by the latter to make it a general regulation rather than an individual order. The latter, quite properly, are reviewed directly by us without the intervention of the Governor.

view. Under § 33 of Act No. 426 any party ". . . prejudiced by any regulation prescribed by the Board may request from the Board the reconsideration of said regulation within twenty (20) days after the promulgation thereof." At the hearing on the motion for reconsideration—or at a hearing on a complaint they were entitled to file under § 15 of Act No. 426 alleging that § 7 and Rule No. 2 were invalid as applied to them—the Associates could if they chose introduce testimony showing the financial impact on them of liquidation in cash, as compared with their expenses and receipts on an over-all basis. *Antonio Roig, Sucrs.* v. *Sugar Board; Eastern Sugar Associates* v. *Sugar Board*, No. 2; *Colonos de Caña de Santa Juana* v. *Sugar Board*, No. 6, decided today. Under these circumstances, the proceeding would have been quasi-judicial and the Board would have been required to make findings of facts. Such a hearing and findings would also be required if a colono complained that the central was not complying with § 7 and the parties offered testimony as just described. *Antonio Roig, Sucrs.* v. *Sugar Board; Eastern Sugar Associates* v. *Sugar Board*, No. 2; *Colonos de Caña de Santa Juana* v. *Sugar Board*, No. 6, decided today.[11] But the Associates offered no testimony to this effect. They confined themselves to discussing legal questions and the feasibility of the terms of Rule No. 2.[12] These were arguments which were properly addressed to the Board at a legislative type of hearing prior to final approval of the regulation. Once they were rejected and Rule No. 2 was finally approved, the latter was subject as in this case to review by this Court pursuant to § 33 of Act No. 426.[13] But under these circum-

[11] Even if we assume that questions of constitutionality are for this Court and not the Board to determine, *cf.* Gellhorn and Byse, *Cases and Comments, Administrative Law*, pp. 314–5, and cases cited; *Hillsborough* v. *Cromwell*, 326 U.S. 620, 625, the Board takes the testimony and finds the facts which form the basis for the constitutional attack in this Court.

[12] The Associates cross-examined the witnesses of other mills and of the attorney for the Board who did offer some "testimony"; but see footnote 15.

[13] The English version of the first sentence of the third paragraph of § 33 is not an adequate translation. The original Spanish version

stances the Associates are in effect attacking Rule No. 2—and § 7—on their face.[14] Consequently, in the absence of testimony purporting to show its individual impact, no findings of fact were required by the Board.[15]

In view of our holding that a quasi-judicial hearing and findings of facts were not required in connection with the adoption of Rule No. 2, obviously no prejudicial error was committed when the Board admitted Exhibits 15 and 16 in evidence.[16] And, in any event, see *Mario Mercado e Hijos* v. *Public Service Comm'n*, 73 P.R.R. 541; *Hilton Hotels* v. *Minimum Wage Board, supra,* p. 643; *Rhodes Pharmacal Co.*

---

provides that a petition for review of a *regulation* of the Board must be filed in this Court within fifteen days after notification thereof; such a petition must be filed to review an *order* of the Board within five days of its notification.

[14] Unlike Act No. 221 of 1942, see *Godreau & Co.* v. *Public Service Comm'n, supra,* pp. 612-3, § 33 of Act No. 426 provides for review by this Court of a regulation of the Board. And such a regulation may be assailed either on its face or as applied to a particular party on the basis of testimony. This is in accord with the doctrine that under some circumstances even though the action of an administrative agency is legislative in nature, provision may be made for judicial review thereof. *Mendoza* v. *Minimum Wage Board,* on reconsideration, 74 P.R.R. 695; *Molini* v. *Sociedad Mario Mercado e Hijos,* 73 P.R.R. 873, 879-80; see *Columbia System* v. *United States,* 316 U.S. 407, 417-21.

[15] The petitioners in *Antonio Roig, Sucrs., South P. R. Sugar Co., Central San Vicente, Inc.* v. *Sugar Board,* decided today on the basis of this opinion, did offer some fragmentary "testimony" on alleged additional costs of liquidating in cash. But this was done at a general hearing at which four mills participated. And none of the "parties" made an effort to prove an individual and complete case showing its entire financial picture, including capital structure, costs, and receipts. In this context we think the said "testimony", designed to support the mills' argument that the Board should not give its final approval to Rule No. 2, did not call for findings of fact which would be required in a case brought (1) by a particular mill or mills complaining of the individual impact on them of a regulation which had already gone into effect, or (2) by a colono demanding that a specific central comply therewith. Cf. *Godreau & Co.* v. *Public Service Comm'n, supra,* pp. 615-7; *Logansport Broadcasting Corp.* v. *United States,* 210 F.2d 24, 27 (C.A. D.C., 1954).

[16] Exhibit 15 is a monograph entitled *The Marketing of Sugarcane in Puerto Rico.* It was written by Marshall E. Miller, an agricultural economist, and published in November 1950 under the auspices of the United States Department of Agriculture. Exhibit 16 is entitled *Statistical Summaries of the 1950-51 Sugar Program for Puerto Rico* and was likewise published by the Federal Department of Agriculture.

v. *Federal Trade Commission*, 208 F.2d 382, 386–7 (C.A. 7, 1953) ; *Dolcin Corp.* v. *Federal Trade Commission*, 219 F.2d 742, (C.A. D.C., July 1, 1954) ; Parker, *supra*, p. 227 ; Gellhorn and Byse, *Cases and Comments, Administrative Law*, pp. 1011 *et seq.*

The order of the Sugar Board will be affirmed with costs and expenses imposed on the petitioners pursuant to § 33 of Act No. 426.

Mr. Justice Ortiz and Mr. Justice Sifre did not participate herein.