## LIGHTHOUSE RUG CO. v. FEDERAL TRADE COMMISSION.

Circuit Court of Appeals, Seventh Circuit. October 25, 1929.

No. 4102.

Samuel T. Lawton, of Chicago, Ill., for petitioner.

W. A. Sweet, of Washington, D. C., for respondent.

Before EVANS and PAGE, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge. The petitioner seeks to review an order entered by the Federal Trade Commission on July 24, 1928, ordering it to cease and desist from—

(1) Using or authorizing the use by others in interstate commerce of the word "Lighthouse" or the words "Light House" either independently or in conjunction or combination with any other word or words, letter, or letters, as a corporate or trade name or as a trade brand or designation in advertising or on labels, circulars, or other advertising matter in connection with the sale or distribution in interstate commerce of its products.

(2) Using or authorizing the use by others in interstate commerce in advertising matter, circulars, or otherwise of the words "Sole Distributors of the Chicago Lighthouse, an Institution for the Blind," so as to confuse or mislead the purchasing public as to the origin of its products, or so as to import or imply that it is the sole distributor of the products made at the Chicago Lighthouse when such is not the fact.

(3) Using or authorizing the use by others in interstate commerce in advertising or upon business stationery or on labels, or otherwise, a pictorial representation of a lighthouse which simulates the emblem or symbol adopted and used by the Chicago Lighthouse to designate its product.

(4) Using or authorizing the use by others in connection with the sale or distribution of its products in interstate commerce any designation, representation, or description on labels or in advertising matter, or otherwise so as to import or imply that its products are made by blind people when such is not the fact.

The complaint in pursuance of which this order was entered alleged that petitioner, a corporation located at Chicago, incorporated October 19, 1923, engaged in the manufac-

ture, sale and distribution, in interstate commerce, of rugs, is using unfair methods of competition in such commerce; that the Improvement Association for Blind People, incorporated in 1910 as a corporation not for pecuniary profit, maintains in Chicago a trade school for training blind people, designated as "The Chicago Lighthouse"; that from 1922 to 1926, with blind people as weavers, it had produced rugs at the rate of approximately 250 a week; that similarly designated training schools for blind people are being operated in other cities, including Duluth, Minneapolis, New Orleans, Syracuse, New York, and Seattle, in which rugs made by blind people are produced; and that "the word 'Lighthouse' when used in connection with rugs or other articles is understood by a substantial portion of the public to indicate that they were produced by the work of blind people."

It was further alleged that petitioner had purchased and resold the rugs of the Chicago Lighthouse until October 19, 1926, when the latter's superintendent and the 16 blind people employed in the Lighthouse in making rugs were employed by petitioner in its factory for similar work; that petitioner manufactures upon power looms, operated by people who are not blind, other rugs similar in every way to those manufactured by the blind people; that petitioner labels all of said rugs "Light House Rugs," with the depiction of a lighthouse, and issues advertising matter containing the words, "Sole Distributors of The Chicago Lighthouse, an Institution for the Blind," a cut of a lighthouse, illustrations of rugs and photographs of scenes showing blind persons weaving rugs; that said labels and advertising matter falsely imply that all of said rugs are produced by the labor of blind people, deceive a substantial portion of the purchasing public into the erroneous belief that all the rugs manufactured by the petitioner are produced by the labor of blind people, induce purchasers thereof to purchase the same in that belief and divert trade from the purchasers of truthfully marked rugs.

After petitioner had filed in this court its petition to review the order above set forth, the respondent commission filed an answer in the nature of a cross-bill, asking for an order of compliance, to which the petitioner filed an answer admitting that it had not complied with the order.

The petitioner admits that it may not use the words forbidden in paragraph 2 of the order, "Sole Distributors of The Chicago Lighthouse, an Institution for the Blind,"

and that it may not in any way imply that its products are made by blind people when such is not the fact, as forbidden in paragraph 4; but it contends that it may lawfully use the word "Light House" and the symbol thereof.

■ Whether the use of the word "Light House," alone or in combination as a corporate trade-name, and the picture of the lighthouse, as forbidden by paragraphs 1 and 3, is legally wrongful depends primarily upon whether or not the finding of the respondent, to the effect, in substance, that the word "Light House," as a term applied to rugs, has acquired amongst a substantial portion of the trade a secondary meaning, i. e., rugs made by the blind in charitable or quasi charitable institutions for the blind, called "Lighthouses," has the substantial support by evidence required by the law. Philip Carey Mfg. Co. v. Federal Trade Commission (C. C. A.) 29 F.(2d) 49; Chamber of Commerce of Minneapolis v. Federal Trade Commission (C. C. A.) 280 F. 45; and Arkansas Wholesale Grocers' Ass'n v. Federal Trade Commission (C. C. A.) 18 F.(2d) 866.

Such findings of facts, if substantially supported by the evidence, are, under section 5 of the Federal Trade Commission Act (15 USCA § 45), conclusive. The Supreme Court in Federal Trade Commission v. Curtis Publishing Co., 260 U. S. 568, 43 S. Ct. 210, 213, 214, 67 L. Ed. 408, says: "Manifestly, the court must inquire whether the Commission's findings of fact are supported by evidence. If so supported, they are conclusive. * * * I think it of high importance that we should scrupulously comply with the evident intention of Congress that the Federal Commission be made the fact-finding body and that the Court should in its rulings preserve the Board's character as such, and not interject its views of the facts where there is any conflict in the evidence."

An examination of the record discloses that in 1910 the New York institute for the blind named and designated its building "The Lighthouse." Its founder later established the Paris "Lighthouse" for men blinded in the World War. Similar associations, known and designated as "Lighthouses," have been established in many cities of the United States and have come to be known by the public as workshops in which blind people are instructed in useful occupations, particularly rug weaving, as that work has been found to be the most practical and suitable for such persons. The New York insti-

tute, in connection with the word "Lighthouse," since 1910 has used the picture of a lighthouse as a symbol to designate its workshops, its summer place in Cornwall, and its camp in New Jersey, all maintained for blind people. It has used the word "Lighthouse" and the symbol upon its advertising, literature, labels, stationery, folders, and rugs, which have reached apparently thousands of people.

The workshop conducted by the St. Louis County Association for the Blind, in Duluth, Minn., since 1919, and similar workshops for blind people operated in Seattle, Wash., Buffalo, and Syracuse, have used and are using the word "Lighthouse" upon labels, tags, and stationery. All of them make rugs by the work of blind people and so indicate on the tags used. These institutions have for a long time caused the word "Lighthouse" to be associated in the public mind with work for or in the interest of blind people and their products. The Improvement Association for Blind People has conducted the "Chicago Lighthouse" since 1915. It adopted, as a symbol, a picture of a lighthouse, which it placed upon its stationery, labels and literature. Its rugs, woven by blind people, bore tags upon which were the words, "Woven by the Blind of the Chicago Lighthouse;" and until 1922 these rugs were sold through the Artists' Guild and similar outlets. Between 1922 and 1926 the rugs were sold to Morris Kline, who resold them as rugs produced by the blind at "The Chicago Lighthouse."

There was evidence that the word "Lighthouse," in the understanding of the public, has become firmly associated with blind people and the rugs made by them. Witnesses for respondent testified that they had been familiar, since 1915, with the use of the word "Lighthouse" to describe products of the blind; that "the term used in connection with the manufacture of rugs is quite generally the word 'Lighthouse' "; and that "the general public is quite generally associating the word 'Lighthouse' with works that are products of the blind." There was extensive evidence of other facts in addition to those recited, material to be considered in connection therewith.

In this situation it is obvious that the finding of the commission as to the secondary meaning of the word "Lighthouse," has substantial support in the evidence before the commission, and under the statute and the Supreme Court's interpretation is conclusive upon this court.

There was substantial evidence to the

contrary offered by petitioner, and, if the finding of the commission had been to the contrary, such finding likewise would have been conclusive upon this court.

■ There remains the further inquiry as to whether the finding of the commission as to unfair competition has substantial support in the evidence. The rugs produced by blind people as heretofore mentioned come in competition with petitioner's product. The record discloses that agents of petitioner and of its dealers, soliciting purchases of rugs in various districts likewise supplied by institutions for the blind, repeatedly misrepresented that the rugs made by petitioner were made by the blind at Duluth Lighthouse for the Blind, or at the "Lighthouse" for the blind at Milwaukee, or by the blind at Chicago, or by the blind at Minneapolis, and made other similar representations; that in New York, Duluth, Milwaukee, Minneapolis, and elsewhere, purchasers of rugs were repeatedly confused as to "Lighthouse" rugs sold by petitioner, in that they purchased rugs upon such representations as created the impressions and beliefs that they were buying the product of the blind made at "Lighthouses" for the blind maintained at various places. These latter institutions, in attempting to sell their rugs, frequently lost their sales because people solicited had previously purchased petitioner's rugs upon the belief that they were the products of the charitable "Lighthouses" of Duluth, Milwaukee, New York, Chicago, or elsewhere. After giving orders to petitioner some purchasers, discovering that petitioner's rugs were factory made at Chicago, refused to accept same. Petitioner's agents frequently did not know whether their samples were machine made or made by the blind, but represented them as made by the blind or finished by the blind.

There was other and substantial evidence of confusion, deception, and unfair competition, to such an extent that the finding of the commission is amply supported thereby and is therefore conclusive upon this court.
■ With conclusive findings of the commission to the effect that the word "Lighthouse," when used in connection with the sale of rugs, has acquired a secondary meaning, i. e., rugs made by blind people in institutions for the blind, and that unfair competition is being conducted by the petitioner with respect thereto, it is apparent that the order of the commission is justified under the law, unless it be that such order is broader than is proper. Baglin v. Cusenier Co., 221 U. S. 580, 31 S. Ct. 669, 55 L. Ed. 863; Comput-

ing Scale Co. v. Standard Computing Scale Co. (C. C. A.) 118 F. 965; Buzby v. Davis, (C. C. A.) 150 F. 275, 10 Ann. Cas. 68; Trappey v. McIlhenny Co. (C. C. A.) 281 F. 23; Photoplay Pub. Co. v. La Verne Pub. Co. (C. C. A.) 269 F. 730; British-American Tobacco Co. v. British-American Cigar Stores Co. (C. C. A.) 211 F. 933, Ann. Cas. 1915B, 363; Rosenberg v. Elliott (C. C. A.) 7 F.(2d) 962; Florence Mfg. Co. v. Dowd & Co. (C. C. A.) 178 F. 73.

Petitioner contends that it should not be enjoined from using the word "Lighthouse" in conjunction with its corporate name in advertising its articles for distribution in interstate commerce. In British-American Tobacco Co. v. British-American Cigar Stores Co., 211 F. 933, 935, Ann. Cas. 1915B, 363, the Court of Appeals for the Second Circuit held that the defendant should be enjoined from the use of the word "British-American" in its corporate name, saying: "If there were any valid reason for adopting the name, or if the business were other than tobacco, there might be some reason for the defendant's action, but no honest reason can be suggested for appropriating the name of the old and long established company. In the absence of any plausible explanation we have a right to assume that the reason was to secure the advantages which would result from a supposed connection with the well known company."

In Juvenile Shoe Co. v. Federal Trade Commission, 289 F. 57, 58, the Court of Appeals for the Ninth Circuit approved an order of the commission enjoining the Juvenile Shoe Company from using the word "Juvenile," in view of the prior use of the same by the Juvenile Shoe Corporation. The court said: "The petitioner went into the business of manufacturing and selling children's shoes and took a name so similar to a senior corporation that was engaged in precisely the same business and in the same field that confusion of the two corporations in the public mind was inevitable. The names 'Juvenile Shoe Corporation' and 'Juvenile Shoe Company, Inc.,' are practically identical. The reported cases in which injunction has been sustained against the use of a corporate name afford few instances of names so similar and so likely to create confusion as those which these two corporations used. In assuming its name, a corporation acts at its peril." Of similar purport is Computing Scale Co. v. Standard Computing Scale Co. (C. C. A.) 118 F. 965.

Here the petitioner, incorporated under the name of "The Light House Rug Com-

pany," engaged in manufacturing rugs for profit, and adopted a facsimile of the symbol of the Chicago Lighthouse for the blind. This symbol it placed upon all its literature and labels. It knew that prior to such incorporation the Chicago Lighthouse had adopted said symbol; that other institutions for the blind had likewise adopted the name "Lighthouse" and a similar symbol. Of the secondary meaning, as found to exist by the commission, it was bound to have notice. It made rugs both by sighted people and by blind people. It went into competition with institutions for the blind. Its rugs made by blind people admittedly cost more to produce than those made by looms. It produced twice as many rugs by looms operated by sighted people as it did by the work of blind people. It is obvious that, inasmuch as it was not an eleemosynary institution, the employment of blind people, the deceptive name "Lighthouse," and the use of the facsimile picture of the lighthouse of the institution for the blind, were intended to and did tend to promote its competition with institutions for the blind by inducing in the minds of purchasers the belief that the product was made by the blind in an institution for the blind known as a "Lighthouse." The reasoning of the two cases cited applies directly to the situation in the instant case; and the order to desist from the use of such corporate name is authorized and proper.

The petitioner contends that it has ceased the practice mentioned in paragraph 3 of the order, and that therefore the Commission should not have included that paragraph. Under the facts shown the commission was justified in its action in that respect. Sears, Roebuck & Co. v. Federal Trade Commission (C. C. A.) 258 F. 307, 6 A. L. R. 358.

There will be a decree in accordance with the commission's order and providing for compliance therewith as prayed by respondent.