## PARKER PEN CO. v. FEDERAL TRADE COMMISSION.

### No. 8856.

Circuit Court of Appeals, Seventh Circuit.

Dec. 17, 1946.

Ivan D. Tefft, P. J. E. Wood and O. A. Oestreich, all of Janesville, Wis., for petitioner.

Wm. T. Kelley, Chief Counsel, Donovan Divet, Sp. Atty., and Walter B. Wooden, all of Washington, D. C., for respondent.

Before EVANS, and MAJOR, Circuit Judges, and BALTZELL, District Judge.

EVANS, Circuit Judge.

We quote from the order of the Federal Trade Commission here presented for review:

"It Is Ordered that the respondent, The Parker Pen Company, a corporation, and its officers, agents, representatives, and em-

ployees, directly or through any corporate or other device, in connection with the offering for sale, sale, and distribution of respondent's fountain pens in commerce * * * do forthwith cease and desist from:

"Using the words 'Guaranteed for Life,' 'Life Guaranteed,' 'Guaranteed Life Contract,' 'Life Contract Guarantee,' or any word or words of similar import, alone or in conjunction with any other word or words, to designate, describe, or refer to respondent's pens, or otherwise representing, directly or by implication, that such pens are unconditionally guaranteed for life, unless respondent does in fact make, without expense to the owner, any repairs or replacement of parts which may be necessitated during the life of the owner by any cause .other than wilful damage or abuse. .

"Representing directly or by implication, that respondent's pens are unconditionally guaranteed for any designated period of time, unless respondent does in fact make, without expense to the owner, any repairs or replacement of parts which may be necessitated during such designated period by any cause other than wilful damage or abuse.

"Nothing contained in this order, however, shall be construed as prohibiting respondent from representing truthfully that the service on its pens (as distinguished from the pens themselves) is guaranteed for life or other designated period of time, even though a charge is imposed by respondent in connection with such servicing, provided the terms of such guarantee, including the amount of such charge, are clearly and conspicuously disclosed in immediate conjunction with such representation."

The crux of the dispute is over the fact that respondent makes a thirty-five cents service charge each time a "lifetime guarantee" pen is brought in for repair. Be-

cause of this service charge, the Commission contends there is deception in respondent's advertisements of "Lifetime Guarantee," which deception, is in violation of the statute, 15 U.S.C.A. § 45(a) which prohibits "Deceptive acts or practices."

At the threshold of our consideration of this appeal, we are confronted by the statutory edict, 15 U.S.C.A. § 45(c), which reads, "The findings of the Commission as to the facts, if supported by evidence, shall be conclusive." Precedent sustains this statutory command.[1]

The evidence in this case consists of over a hundred exhibits, mostly copies of petitioner's advertisements. The oral evidence was of little significance. The gist of the Commission's proof lay in petitioner's advertisements.

We attempt a description of them so as to better evaluate the asserted substantiality of the evidence to support the Commission's finding. Over half of each advertisement was generally devoted to pictorial matter,— of the pens themselves, and of their present or potential owners (such as graduates, brides, court reporters, etc.). On the picture of the pen is a tiny blue diamond, and adjacent to this picture is a relatively large blue diamond (sometimes half an inch in length), beneath which usually, or often, appears the phrase, "Guaranteed for Life by Parker's Blue Diamond." Or, the phrase, "Guaranteed for Life" was in sizeable type, distinctive in coloration, or position, so that it was calculated to catch an eye's fleeting perusal of the contents of the advertisement. Then, in a less prominent place in said advertisement, usually at the bottom of the page, and in smaller, light print, there appeared this sentence preceded by a small blue diamond: "Pens marked with the Blue Diamond are guaranteed for the life of the owner against everything except loss or intentional damage, subject only to a charge of 35¢ for postage, insurance

[1] Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655; F.T.C. v. Standard Education Soc., 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141; F.T.C. v. Raladam Co., 316 U.S. 149, 62 S.Ct. 966, 86 L.Ed. 1336; Jacob Siegel Co. v. F.T.C., 66 S.Ct. 758; Zenith Radio Corp. v. F.T.C., 7 Cir., 143 F.2d 29; A. P. W. Paper Co. v. F.T.C., 2 Cir., 149 F.2d 424; U. S. v. Willard Tablet Co., 7 Cir., 141 F.2d 141; Modern Marketing Service v. F.T.C., 7 Cir., 149 F.2d 970; Milk & Ice Cream Can Institute v. F.T.C., 7 Cir., 152 F.2d 478; U. S. Maltsters' Ass'n v. F.T.C., 7 Cir., 152 F.2d 161.

and handling, provided complete pen is returned for service."

The variations in the advertisements were, of course, great, but throughout all of them, the Commission asserts it can be stated that emphasis was placed upon the *guarantee,* and negligible, insignificant, and remote attention paid to the condition attached to, or limiting, the guarantee i. e., the payment of a 35¢ service charge.

Petitioner calls attention to the fact that this service charge is often not at all commensurate with the repair charge; that the clerical cost connected with such repair is a substantial item.

The charge is made irrespective of whether the pen is to be mailed to its owner or picked up by him at a branch office of petitioner. In other words, it is a flat rate charged at the time of each repair. (The charge had been lower but was evidently raised to 35¢ during the N.R.A. period.)

■ After viewing all the advertisements we can not say as a matter of law that the Commission was arbitrary in inferring that deception might occur to an inattentive reader of the advertisement, misleading him into the belief that purchase of such a pen would give him a lifetime of satisfactory use, with no further expenditure required.

Petitioner argues that the use of the blue diamond proximate to the guarantee phrase and then proximate to the limitation of guarantee performs the equivalent function of an asterisk or similar symbol to attract the reader's attention to important, related and limiting matter. While such a contention has plausibility, it loses some of its weight when it is pointed out that the blue diamond is in the nature of a trademark connoting petitioner's product. A casual reader might well be excused from recognizing the peculiar dual function of petitioner's blue diamond as not only a trade mark, but an asterisk, calling his attention to an important limitation on petitioner's guarantee liability.

■ The Commission's function in protecting the public against deceptive advertising has been stated in several cases,[2] which we will not repeat here. Their purport is that the Commission's duty is to protect the casual, one might even say the negligent, reader, as well as the vigilant and more intelligent and discerning public.

■ We have carefully searched the law of sales to discover the legal incidents of a "guarantee" (or warranty) to ascertain if such a promise or contract encompasses assurance of satisfactory performance without further incidental consideration. Aside from Cobb v. Truett, La.App., 11 So.2d 120 the law seems silent. From such silence we deduce the inference that a guarantee per se negatives the idea of a further consideration.

While studying these advertisements in trying to determine the possibility of their being deceptive, we were reminded of the analogous problem in the format of insurance policies, and from that analogy we find support for the Commission's finding. Many states now require that any limitation upon liability by the insurance company, theretofore stated in a policy, must be given equal prominence in the policy, so that the insured will not be misled by an initial and prominent statement of liability in the policy which liability is greatly whittled down in a subsequent, remote part of the policy, in fine, close type, not ordinarily read even by the intelligent and diligent insured.[3]

We feel the Commission is, however, over-meticulous in denying the petitioner all right to use the phrase "Life Guarantee" or words of similar import, except on the condition that it make no further charge for repairs.

■ A guarantee is suggestive of a contract and carries a meaning somewhat akin to warranty or representation. Parties are free to make their contracts and unless deceptive words are used they may

[2] Progress Tailoring Co. v. F.T.C., 7 Cir., 153 F.2d 103; Dorfman v. F.T.C., 8 Cir., 144 F.2d 737; Charles of Ritz Corp. v. F.T.C., 2 Cir., 143 F.2d 676; Jacob Siegel Co. v. F.T.C., 66 S.Ct. 758; Parke, Austin & Lipscomb v. F.T.C., 2 Cir., 142 F.2d 437; F.T.C. v. Standard Education Society, 302 U.S. 112, 58 S. Ct. 113, 82 L.Ed. 141; Aronberg v. F.T. C., 7 Cir., 132 F.2d 165.

[3] Couch, Cyclopedia of Insurance Law, Sec. 76 and cases there cited.

advertise their goods and define the limits of their guarantee liability.

 If a pen be guaranteed for life, for example, we see no valid reason why such guarantee should not be limited or restricted by a statement of a fixed price for necessary repairs. Ordinarily the word, guarantee, or warranty, is incomplete unless it is used in connection with other explanatory words. To say a pen or other subject is guaranteed is meaningless. What is the guarantee? The answer to this question gives meaning to the word, "guaranteed." The same is true of the words, "Guaranteed for Life" or "Life Guarantee."

Here the petitioner, in the advertisements, guaranteed it would make repairs if needed, during the life of the buyer, at 35¢ for each repair. To such a guarantee there can be no valid objection.

In the case before us, there was no evidence to show any deception occurred and none was claimed by respondent. While such evidence was not a necessary part of the respondent's case, it might have raised a doubt as to the possibility of deception through the use of the advertisement had there been a single instance of deception disclosed in all the extensive and long continued business of petitioner.

We conclude that the objection to petitioner's advertisement is that the limiting words of the guarantee appear in small print, plus the further fact that the location of the limiting words is some distance from the words of the guarantee.

In reaching our conclusion we are not unmindful of the fact that Congress made the Federal Trade Commission and not the court, the finder of the facts respecting the possibility of deception.

The order of the Commission must be modified to permit petitioner to continue its advertisements provided it will place the words of limitation "Pens marked with the Blue Diamond are guaranteed for the life of the owner against everything except loss or intentional damage, subject only to a charge of 35¢ for postage, insurance and handling, provided complete pen is returned for service." close to the words, "Life Guarantee," etc. and in print of the same size as the other regular printed matter in its advertisements.

The parties should endeavor to agree and, if possible, stipulate as to terms. If parties are unable to agree upon terms of the order, either party may present its proposed order giving notice to its adversary of its action.

The order of the Commission is modified.