237 F.2d 654
 Ray S. KALWAJTYS, Walter J. Kalwajtys, Bernice Kalwajtys, and Weronika Kalwajtys, individually and as co-partners, doing business as General Products, Petitioners,
v.
FEDERAL TRADE COMMISSION, Respondent.
 No. 11721.
 United States Court of Appeals Seventh Circuit.
 October 30, 1956.
 
 Arthur Abraham, Mandel L. Anixter, Ralph J. Gutgsell, Chicago, Ill., for petitioner.
 Robert B. Dawkins, Asst. General Counsel, Alvin L. Berman, Atty., Federal Trade Commission, Washington, D. C., Earl W. Kintner, General Counsel, Washington, D. C., Attys. for Federal Trade Commission.
 Before DUFFY, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.
 DUFFY, Chief Judge.
 
 
 1
 This is a petition to review and set aside a cease and desist order of the Commission. The complaint charged petitioners with having engaged in unfair and deceptive acts and practices and unfair methods of competition in violation of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq. The practices complained of were in connection with the sale and distribution of photograph albums and certificates for photographs.[1]
 
 
 2
 Petitioners manufacture and sell photograph albums known as "Build-A-Book" which is the product here involved. The method of distribution is by 300 to 350 salesmen who obtain orders through personal solicitation. The names of prospects are obtained from public birth records.
 
 
 3
 There is no dispute as to the approach used by petitioners' salesmen. Petitioners prepared a very detailed sales presentation which was given to each salesman. A considerable portion of the instructions were to be used verbatim, and the balance closely followed.
 
 
 4
 A few excerpts from these instructions follow:
 
 
 5
 "1) Door Opener. The salesman looks at a 3 × 5 card on which he has recorded the name and address of the prospect and says, `I'm looking for the John Jones Family. * * * Are you Mrs. Jones? * * * Mrs. Jones, I am from General Products. * * * We have, in reality, a gift for selected families with (a baby) or (a young child). The reason we check so close is because the gifts are quite expensive and they have been promised to a selected number of families and, * * we want to be sure we have the right families. I have it here with me so if you have a moment I'll just step in and find out how you want it engraved and I'll show you how to assemble it.'"
 
 
 6
 "2) In the Home. After gaining admittance to the house and being seated next to the prospect the representative states, `First of all, Mrs. Jones, I'd like to mention that our combination offer is in reality your gift * * * through an advertising appropriation for new products. You see, we have spent money on advertising for 18 years, the same as other manufacturers who spend millions on Radio, T.V. and magazines, or like cereal companies who spend money for samples left in your doorway.' * * * After some discourse, the salesman is instructed to ask `How do you like your Build-A-Book, Mrs. Jones?'"
 
 
 7
 Then comes the instruction "Certificate Opener" which the salesman is required to memorize. "Now, you are probably wondering why we are giving you this beautiful Family Album as a combination gift. * * * the purpose is this. Each album that we place in the home will bring us from three to five new customers each year. In other words, it is placed with you on an advertising basis. The Family Album is, to us, a showcase in your home. (Explanation that a show case must have portraits). With this in mind we are also going to help you fill your album * * *."
 
 
 8
 Up to this point the salesman has said nothing to indicate the album is for sale. He next explains the certificates whereby Mrs. Jones can obtain 10 portraits for $39.95, which the salesman states covers labor and cost. He then speaks of a "once in a lifetime combination offer" of the photographs and album for $39.95.
 
 
 9
 On August 8, 1955 the hearing examiner filed an initial decision containing his findings, conclusions and a cease and desist order. The Commission thereafter denied an appeal and adopted the findings, conclusions and order of the hearing examiner. Among the findings were that the petitioners had represented to prospective purchasers that: 1) they were to receive a gift of an album which was being presented only to selected families with a baby or young child, and that only a few of such albums would be given in the area; 2) the album was free, and that the charge was for photographs to be taken thereafter; 3) the $39.95 price which was charged for the album-certificate combination was a promotional and reduced price. The Commission also found that petitioners' representations were false, misleading and deceptive, and that they had the tendency and capacity to mislead and deceive a substantial portion of the purchasing public; that substantial trade in commerce has been unfairly diverted to petitioners from their competitors and substantial injury has thereby been done to competition in commerce. The Commission concluded that the acts and practices of petitioners were to the prejudice and injury of the public and of petitioners' competitors, and constitute unfair and deceptive acts and practices and unfair methods of competition in commerce within the intent and meaning of the Federal Trade Commission Act.
 
 
 10
 The challenged portion of the Commission's order would require petitioners, in selling albums and certificates for photographs, to refrain from representing directly or by implication: a) that they sell only to selected persons; b) that their albums are given free or without cost; c) that the prices at which they regularly or customarily sell their products are promotional or reduced prices.
 
 
 11
 Petitioners insist the Commission's order should be set aside because the representations made by their salesmen were true. Petitioners say their prospective customers were, in fact, "selected"; that the word "few" is a relative term of great elasticity, and that the price of $39.95 was, in fact, promotional because it was intended to promote the sale of their albums.
 
 
 12
 A statement may be deceptive even if the constituent words may be literally or technically construed so as to not constitute a misrepresentation. Rothschild v. Federal Trade Commission, 7 Cir., 200 F.2d 39, 42; D.D.D. Corporation v. Federal Trade Commission, 7 Cir., 125 F.2d 679, 681. The buying public does not weigh each word in an advertisement or a representation. It is important to ascertain the impression that is likely to be created upon the prospective purchaser. See Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165, 167.
 
 
 13
 The meaning of advertisements or other representations to the public, and their tendency or capacity to mislead or deceive, are questions of fact to be determined by the Commission and should be upheld by a reviewing Court unless arbitrary or clearly wrong. Rhodes Pharmacal Co., Inc., v. Federal Trade Commission, 7 Cir., 208 F.2d 382, 387; Parker Pen Co. v. Federal Trade Commission, 7 Cir., 159 F.2d 509, 511. Petitioners do not contest the findings of the Commission that the albums were not, in fact, given free, but contend that no one could have been misled. We think the Commission was warranted in reaching a contrary conclusion.
 
 
 14
 In Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 113-117, 58 S.Ct. 113, 82 L.Ed. 141, the Court approved the Commission's findings that practices quite similar to those involved in the case at bar were false, deceptive and misleading. The Supreme Court held that representing that encyclopedias were a gift made for advertising purposes; that prospective customers were specially selected persons; that the purchasers were paying only for a loose-leaf extension service (and not for the encyclopedia); that the price quoted was a reduced price, were all parts of the same sales plan and the Commission was justified in proscribing such practices.
 
 
 15
 In Consolidated Book Publishers v. Federal Trade Commission, 7 Cir., 53 F. 2d 942, 944 this Court sustained a Commission's order which prohibited representations that a few sets of a publication were being given free for advertising purposes when no gift was intended and that purchasers were paying only for a loose-leaf supplement to a publication or for certain services in connection therewith when, in fact, the price asked covered the book and the services.
 
 
 16
 We think the findings of the Commission are supported by substantial evidence. We agree with the conclusions of the Commission that petitioners were engaged in unfair and deceptive practices in commerce. The petition to set aside the cease and desist order of the Commission will be denied, and enforcement of the order of the Commission is
 
 
 17
 Ordered.
 
 
 
 Notes:
 
 
 [1]
 The complaint contained other charges but a consent order was stipulated as to some. There are also other portions of the Commission's cease and desist order which petitioners are not here contesting