NIRESK INDUSTRIES, INC., a Corporation, and Bernice Stone Kahn, Individually and as an officer of said corporation, Petitioners,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 12745.

United States Court of Appeals
Seventh Circuit.

March 2, 1960.

Rehearing Denied June 8, 1960.

338

Stephen Herman, Chicago, Ill., B. L. Pollak, William J. Welsh, Chicago, Ill., Herman & Pollak, Chicago, Ill., of counsel, for petitioners.

Alan B. Hobbes, Asst. General Counsel, Miles J. Brown, Attorney, Federal Trade Commission, Washington, D. C., Daniel J. McCauley, Jr., General Counsel, Washington, D. C., for respondent.

Before DUFFY and SCHNACKENBERG, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

This cause is before the Court upon a petition to review and set aside a cease and desist order entered against petitioners by the Federal Trade Commission after hearings on a complaint filed by the Commission which charged petitioners with engaging in unfair and deceptive acts and practices and unfair methods of competition in commerce in violation of Section 5(a) of the Federal Trade Commission Act. 15 U.S.C.A. § 45(a).

Petitioner, Niresk, is a corporation engaged in the conduct of a mail order business and in the sale and distribution of kitchen ware in interstate commerce. Petitioner, Bernice Stone Kahn, is the president of Niresk. In such capacity,

she formulates and controls Niresk's policies, acts and practices.

One of the products sold by Niresk during the period of time encompassed by the evidence on the record was an electric cooker-fryer which was manufactured by Merit Enterprises, Inc., of Queens Village, New York. In conjunction with its sales campaign for that cooker-fryer, Niresk employed advertisements which appeared in a large number of periodicals of nationwide circulation. Those advertisements stated to the reader, and to the purchasing public at which they were directed, that the regular value of the cooker-fryer which Niresk was offering for sale was $39.95—$29.95, in the later advertisements—whereas Niresk was offering the appliance for sale to the public at prices ranging from $8.95 to a low of $6.95. The Merit fryer was equipped with a Westinghouse thermostat. As a part of its sales campaign for the appliance, the petitioners prominently displayed the Westinghouse name in its advertisements. The advertisements also displayed, in various contexts, the Good Housekeeping Guaranty Seal.

In its complaint, issued April 16, 1957, the Commission charged that petitioner's representations with respect to price of the appliance and their use of the Westinghouse name and the Good Housekeeping Seal in such advertisements for sale of the Merit cooker-fryer were either false or deceptive, or both false and deceptive. The complaint therefore charged that each such advertising practice constituted an unfair act and practice, and also that petitioners' use of the Westinghouse name and the Good Housekeeping Seal constituted unfair competition in commerce in violation of the Act.

Petitioners answered the complaint, *inter alia*, admitting the use in their advertising of the charged representations as to price and as to the fact of petitioners' use of the name Westinghouse and the Good Housekeeping Seal, but denying the allegations that such representations were false or deceptive.

Hearings were had on the complaint and answer before a trial examiner. Upon conclusion of the hearings, the trial examiner entered his initial decision finding, *inter alia*, that the representations in petitioners' advertising that the regular value of the appliance was either $39.95 or $29.95 were false, that the name Westinghouse had been used, and was being used, in advertising in a fashion which tended to induce the belief that the appliance was manufactured by the Westinghouse Electric Corporation, that petitioners' use of the Good Housekeeping Seal had the effect, by implication, of inducing the belief that the appliance had been awarded that seal, when, in fact, petitioners' use thereof was unauthorized, and that petitioners had falsely represented by their advertising that they were offering the Merit appliance to the public at a reduced price and at a substantial saving from the regular or customary price at which such appliance was offered for sale. The examiner concluded that each of the summarized representations by petitioners contained the seed of deception and constituted an unfair and deceptive practice within the proscription of the Act.

The trial examiner filed a proposed order, based upon the above summarized findings and conclusions, which directed petitioners, in the offering for sale, sale or distribution of the cooker-fryer or any other product, or products, in commerce, to cease and desist from representing either directly or by implication, that the regular value of any product was in excess of the actual customary retail value thereof, that any product was being offered to the public at a saving from the customary retail price unless such representation was true, that any product is manufactured by Westinghouse Electric Corporation, or other person or firm, when such is not a fact, and that any product has been awarded the Good Housekeeping Guaranty Seal when such is not a fact.

Petitioners appealed the proposed order of the examiner to the Commission. After review upon briefs and oral argu-

ment, the Commission rendered its decision denying the appeal, adopting as its own the initial decision of the examiner and entering the cease and desist order which the examiner had proposed. The instant petition was filed, praying review of that order.

▇▇▇ Misrepresentations of the regular and customary value of a product offered for sale and of savings afforded by an offered sale price of such product are unfair and deceptive practices as defined by the Act. Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 115–116, 58 S.Ct. 113, 82 L.Ed. 141; Kalwajtys v. Federal Trade Commission, 7 Cir., 237 F.2d 654, 656, 65 A.L.R.2d 220, certiorari denied 352 U.S. 1025, 77 S.Ct. 591, 1 L.Ed.2d 597. The use of labels or trade names in a manner having a capacity or tendency to mislead the purchaser is likewise prohibited by the Act. Lighthouse Rug Co. v. Federal Trade Commission, 7 Cir., 35 F.2d 163, 165–166; Pep Boys, etc. v. Federal Trade Commission, 3 Cir., 122 F.2d 158, 161; Federal Trade Commission v. Real Products Corporation, 2 Cir., 90 F.2d 617, 619. Therefore, a cease and desist order was properly entered in this case if the Commission's findings of fact are supported by substantial evidence upon the record as a whole. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 487–488, 71 S.Ct. 456, 95 L.Ed. 456; Erickson v. Federal Trade Commission, 7 Cir., 272 F.2d 318; Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165, 170.

▇▇▇ We have reviewed the record and conclude that the findings of the Commission are supported by substantial evidence, even though, upon the record which the Commission chose to make in this case, a close question is presented as to substantial support for findings relating to price representations.

Relevant to the price question, it is not disputed that petitioners did represent that $39.95 (sometimes $29.95) was the regular price of the appliance, and that they were offering the appliance to the purchasing public at the substantially reduced prices of $8.95, $7.95, and $6.95 during the various periods of time covered by the advertisements in the record. It is not disputed that the unit cost of the appliance to petitioners was $5.25. Niresk's manager testified that Niresk had never offered the appliance for sale at either the $39.95 or the $29.95 prices, but that its regular selling price of the appliance varied from $8.95 to $6.95, the sale prices stated in the several advertisements. He further testified that he knew of no one who had offered the Merit appliance for sale at either the $39.95 or $29.95 prices. He stated that petitioners had relied upon representations made in advertising fliers and a Life Magazine advertisement by Merit Enterprises, Inc., which had represented that the appliance was a $39.95 value. Additional evidence on this question was largely restricted to the testimony of two buyers of small appliances who were employed by Chicago department stores. Each testified that, during the critical periods covered by the evidence in the record, there were cooker-fryer appliances on the market which did retail for as much as $39.95, but that appliance of quality comparable to that of the Merit unit sold at retail during the critical period involved here for prices ranging from $12.00 to $20.00 per unit. One of these witnesses testified that such an appliance might have retailed for as much as $22.95 during a part of 1957. One of these witnesses testified that cooker-fryers similar to the fryer shown in the Merit Enterprises Life advertisement would not have sold at retail for $39.95 at the time the Life ad appeared, but would have been priced at less than $15.00 per unit.

▇▇▇ On the basis of the record as a whole, we must conclude that the Commission's findings that petitioners' pricing representations were false and that the same constituted unfair and deceptive practices in commerce, are sustained by substantial evidence. We do feel, however, that the Commission must be reprimanded for its apparent position in this case upon the pricing questions that it would hear just enough evidence as

would, *prima facie,* sustain its findings as to the practices charged in the complaint and no more.[1] The Commission, as other administrative agencies, occupies a unique position which was unknown to common law jurisprudence. The Commission wears all of the hats involved in proceedings instituted under its authority. It is, at once, the accuser, the prosecutor, the judge and the jury. The wide scope of its discretion in the resolution of questions within its realm is founded and sustained by the courts upon the fact that its jurisdiction exists in a specialized field, wherein expertise is felt to be a necessity. Under those circumstances we feel that the Commission should assume a wider responsibility than that necessarily undertaken by a private litigant and substantiate its injunctive orders upon the concrete basis of a thorough investigation and full presentation of evidence whenever the existence of unfair or deceptive practices is charged against any respondent.

▮ Here petitioners contend with some justification that the Commission's findings as to illegality of the petitioner's pricing practices are based largely upon the testimony of buyers for large Chicago department stores who were not qualified to testify to conditions in other parts of the country or to pricing practices in the mail order industry. We think the point asserted by petitioners is principally an attack in this court upon the credibility of those witnesses and upon the weight which might be accorded to their testimony. Both credibility questions and testimonial weight are questions upon which we may not second-guess the Commission. Corn Products Refining Co. v. Federal Trade Commission, 324 U.S. 726, 739, 65 S.Ct. 961, 89 L.Ed. 1320; Erickson v. Federal Trade Commission, 7 Cir., 272 F.2d 318; Carter Products, Inc. v. Federal Trade Commission, 9 Cir., 268 F.2d 461, 491, certiorari denied 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120. As we have indicated, we believe that the undisputed testimony of those witnesses, considered in the light of the record as a whole, does form a substantial basis upon which the Commission's findings rest. Upon that basis we sustain the Commission's findings, but it ill behooves the Commission to take the position that it need adduce only enough evidence to barely sustain its ultimate decision. Such a position can only lead to a lessening of respect and confidence in the Commission's integrity and acts.

Petitioner's contentions that the findings of the Commission with respect to their unfair and deceptive use of the Westinghouse name and Good Housekeeping Seal are not substantially supported by the evidence are wholly without merit. In this respect, in its early advertisements, Niresk displayed the Westinghouse name as one of the most prominent and leading characteristics of its advertising. The Good Housekeeping Seal, used sometimes in conjunction with the cover of the cooker-fryer and sometimes separate and apart from the cover or other part of the appliance, was promi-

---

1. The Commission's position is epitomized by the following excerpts from colloquy between the Examiner and counsel:

"Mr. Mathias: (Commission's Attorney) * * * I would like to offer more evidence as to retail prices on such products in other parts of the country and also retail prices in the mail order trade, and also dissatisfied customer testimony. In view of the facts, especially since apparently we are going on the assumption the witnesses I put on yesterday were very limited in their knowledge as to the prices in the retail trade, I think it is absolutely necessary to put on the retail trade witnesses from other parts of the country.

*    *    *    *    *

"Trial Examiner Cox: Mr. Mathias, I don't want to evaluate the evidence until I have seen it in writing, but I am not inclined to hold very many hearings with respect to the selling price of this cooker or of comparable cookers. I think, however, you might want to read the record and evaluate that before we make any other moves.

"Mr. Mathias: That is agreeable with me sir.

"Trial Examiner Cox: But at this time I would be very strongly inclined not to set any more hearings in this proceeding unless there is more evidence than you have just indicated, * * * *."

nently displayed and emphasized. We think the Commission could find and conclude, from an inspection of the advertisements alone, that they had a tendency to induce the purchasing public to believe that the appliance was manufactured by the Westinghouse Electric Corporation and that the appliance had been awarded the Good Housekeeping Seal. As we pointed out in Zenith Radio Corp. v. Federal Trade Commission, 7 Cir., 143 F.2d 29, 31:

"The Commission was not required to sample public opinion to determine what the petitioner was representing to the public. The Commission had a right to look at the advertisements in question, consider the relevant evidence in the record that would aid in interpreting the advertisements, and then decide for itself whether the practices engaged in by the petitioner were unfair or deceptive, as charged in the complaint."

▉▉ To the same effect are, Kalwajtys v. Federal Trade Commission, 7 Cir., 237 F.2d 654, 656, 65 A.L.R.2d 220, certiorari denied 352 U.S. 1025, 77 S.Ct. 591, 1 L.Ed.2d 597; Progress Tailoring Co. v. Federal Trade Commission, 7 Cir., 153 F.2d 103, 105; Parker Pen Co. v. Federal Trade Commission, 7 Cir., 159 F.2d 509, 510–511; Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165, 167. It was for the Commission, not this court, to determine the ultimate impression of these advertisements upon the minds of the purchasing public, and, in making that determination, the Commission may look not only to the meaning of the words used, but also to "all that is reasonably implied." Aronberg v. Federal Trade Commission, supra, 132 F.2d at page 167. As Judge Lindley there pointed out, the Commission's determination is not restricted to a consideration of what impression an expert or careful reader would draw from the advertisements. The Commission may employ its expertise and envision an advertisement

as it would be seen by the public generally "which includes the ignorant, the unthinking and incredulous, who, in making purchases, do not stop to analyze but too often are governed by appearances and general impressions." Ibid.

Again, in Kalwajtys v. Federal Trade Commission, supra, 237 F.2d at page 656, we said:

"The meaning of advertisements or other representations to the public, and their tendency or capacity to mislead or deceive, are questions of fact to be determined by the Commission and should be upheld by a reviewing Court unless arbitrary or clearly wrong."

Here we cannot say that the Commission's determination that petitioner's use of the Westinghouse name and the Good Housekeeping Seal constituted unfair and deceptive practices is either arbitrary or clearly wrong. We do not think the findings with respect to such practices are weakened because petitioners abandoned the use of the Good Housekeeping Seal in advertising while the complaint was pending before the Commission or by the fact that petitioners, after a consent decree in a private suit brought against them by Westinghouse Electric Corporation, have modified the manner in which they now use the Westinghouse name in conjunction with the advertising and sale of their appliances. Petitioners' present use of the Westinghouse name may well comply with the consent decree in the private suit instituted by Westinghouse, but it does not necessarily follow that that use is not yet deceptive as the Commission found.

Finally, petitioners contended that the order of the Commission is too broad and should, therefore, be set aside or modified. The findings of unfair and deceptive practices against petitioners were confined to their advertising and sale of the cooker-fryer, while the order of the Commission enjoins the use of like advertising by petitioners in conjunction with the sale of the fryer or any other

product.[2] Petitioners contend that the order must be restricted to their advertisement and sale of the cooker-fryer alone.

■■■■ We do not agree with that contention. The Commission has a large discretion in its choice of a remedy which it deems necessary to cope with the unlawful practices found, and the courts may interfere with the Commission's choice only if the remedy selected bears no reasonable relationship to such unlawful practices. Federal Trade Commission v. National Lead Co., 352 U.S. 419, 429, 77 S.Ct. 502, 1 L.Ed.2d 438; Federal Trade Commission v. Ruberoid Co., 343 U.S. 470, 473, 72 S.Ct. 800, 96 L.Ed. 1081. Commission orders are not designed to punish for past transgressions, but are designed as a means for preventing "illegal practices in the future." Federal Trade Commission v. Ruberoid Co., supra, 343 U.S. at page 473, 72 S.Ct. at page 803. To the end that the Commission may achieve that purpose, its orders may prohibit not only the further use of the precise practice found to have existed in the past, but also, the future use of related and similar practices. Ibid. Petitioners market a large number of products in Commerce.

They stand adjudged guilty of the use of illegal practices in the advertisement and sale of one product. We think it is entirely reasonable for the Commission to frame its order broadly enough to prohibit petitioners use of identical illegal practices for any purpose, or in conjunction with the sale of any and all products.

The petition to review and set aside the Commission's order is hereby denied, and enforcement of the order of the Commission is ordered.

SCHNACKENBERG, Circuit Judge (concurring).

I approve of Judge MERCER'S opinion with the exception that I do not agree with his criticism of the Commission for taking the position that it need adduce only enough evidence to barely sustain its ultimate decision, and that such a position can only lead to a lessening of respect and confidence in the Commission's integrity and acts.

If it adduces enough evidence to sustain its action and decision I see no reason why it should spend public funds by enlarging its investigation for the purpose of gathering additional evidence.

2. The order proposed by the Examiner and entered by the Commission is in words and figures as follows:

"It is Ordered that respondent Niresk Industries, Inc., a corporation, and its officers, and respondent Bernice Stone Kahn, individually and as an officer of said corporation, and respondents' agents, representatives and employees, directly or through any corporate or other device, in connection with the offering for sale, sale, or distribution of the Cooker-Fryer or any other products in commerce, as 'commerce' is defined in the Federal Trade Commission Act, do forthwith cease and desist from:

"A. Representing, directly or by implication, that:

"1. Certain amounts are the regular and usual retail prices of products when such amounts are in excess of the prices

at which such products are regularly and customarily sold at retail;

"2. Any savings are afforded from the retail price of products unless such savings represent a reduction from the price at which said products are regularly and customarily sold at retail;

"3. The Cooker-Fryer is the product of, or manufactured by, the Westinghouse Electric Corporation; or that any other product is the product of, or manufactured by, the Westinghouse Electric Corporation or any other corporation, firm, or individual, when such is not a fact;

"4. The Cooker-Fryer has been awarded the Good Housekeeping Guaranty Seal; or that any other product has been awarded the Good Housekeeping Guaranty Seal, when such is not a fact."