HELBROS WATCH COMPANY, Inc.,
et al., Petitioners,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 16912.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 26, 1962.

Decided Nov. 29, 1962.

Mr. B. Paul Noble, Washington, D. C., for petitioners.

Mr. Charles C. Moore, Jr., Atty., F. T. C., with whom Messrs. James McI. Henderson, Gen. Counsel, and Frederick H. Mayer, Atty., F. T. C., were on the brief, for respondent.

Before WILBUR K. MILLER, FAHY and WRIGHT, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

Petitioners seek review [1] of a final order of the Federal Trade Commission re-

1. 38 Stat. 719 as amended, 15 U.S.C. § 45 (d) (e) (g).

quiring them, inter alia,[2] to cease and desist from:

"Representing directly or by implication:

\* \* \* \* \* \*

"(e) That certain amounts are the usual and regular retail prices of respondents' merchandise when such amounts are in excess of the prices at which such merchandise is usually and regularly sold at retail, by the class of retailers selling such merchandise, in the trade area or areas where the representation is made."

Fictitious pricing in the form of false "pre-ticketing" is the now widespread practice, particularly among, but by no means limited to, manufacturers, of representing, usually on the package or the article itself, a retail price substantially higher than the actual price to the consumer. Its vice is its deception and the understandable inability of the price-conscious consumer to control his urge to make a "good buy."[3]

▆▆ Petitioners do not dispute that fictitious pricing is illegal.[4] The only issue is whether the finding of the Com-

mission, that the retail price tag placed on the watches is in excess of the usual and regular price at which the watches sell at retail, is supported by substantial evidence upon the record viewed as a whole.[5] We conclude that it is.

Helbros manufactures two distinct lines of watches which it sells to three classes of buyers. It places a price tag, clearly visible to the ultimate purchaser, on all the watches, and it is apparent that this price tag carries with it the implication that the amount listed thereon is the usual and regular price at which the watch sells at retail. One line of watches is sold exclusively to house-to-house canvassers and long-term credit jewelers. These watches are pre-ticketed at 400 to 500 per cent of cost. This market accounts for about 30 per cent of Helbros' business. Helbros sells an entirely different line, constituting the other 70 per cent of its business, to two different groups. One group, absorbing 40 per cent of Helbros' total sales, or 57.1 per cent of this particular line, is made up of discount stores and catalog houses. The balance of this line is sold to jobbers and ordinary retail jewelers. This sec-

2. Petitioners were also ordered to desist from representing that their watches contained ruby jewels and were shockproof, water-resistant, and guaranteed for life. No appeal was taken from this portion of the order.

3. See Murphy, The Ethics of Retail Price Advertising, 6 Antitrust Bulletin 419, 423 (1961); Comment, 39 Tex.L.Rev. 903, 906 (1961); Beer, Federal Trade Law and Practice, 387 (1942). The Commission has issued certain guidelines for determining whether advertised prices are fictitious. See 2 Trade Regulation Reporter ¶ 7897. Compare the Automobile Information Disclosure Act, 72 Stat. 325, 15 U.S.C. §§ 1231–1233.

4. Fictitious prices are illegal even though it is obvious to the sophisticated that the price tag is only a come-on. "The law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions." Florence Mfg. Co. v. J.

C. Dowd & Co., 2 Cir., 178 F. 73, 75 (1910). See Federal Trade Comm'n v. Standard Education Society, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141 (1937); Art National Manufacturers Distributing Co. v. F. T. C., 2 Cir., 298 F.2d 476 (1962), cert. denied, 370 U.S. 939, 82 S.Ct. 1588, 8 L.Ed.2d 808 (1962); Bankers Securities Corporation v. F. T. C., 3 Cir., 297 F.2d 403 (1961); Baltimore Luggage Company v. F. T. C., 4 Cir., 296 F.2d 608 (1961), cert. denied, 369 U.S. 860, 82 S. Ct. 949, 8 L.Ed.2d 17 (1962); Clinton Watch Company v. F. T. C., 7 Cir., 291 F.2d 838 (1961); Niresk Industries, Inc. v. F.T.C., 7 Cir., 278 F.2d 337 (1960), cert. denied, 364 U.S. 883, 81 S.Ct. 173, 5 L.Ed.2d 104 (1960); Harsam Distributors, Inc. v. F.T.C., 2 Cir., 263 F.2d 396 (1959); Kalwajtys v. Federal Trade Commission, 7 Cir., 237 F.2d 654, 65 A.L. R.2d 220 (1956), cert. denied, 352 U.S. 1025, 77 S.Ct. 591, 1 L.Ed.2d 597 (1957); Thomas v. Federal Trade Commission, 10 Cir., 116 F.2d 347 (1940).

5. 5 U.S.C. § 1009(e); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

ond line is pre-ticketed for both groups at 250 per cent of cost.[6]

The evidence as to the price actually paid by the ultimate consumer shows that the line of watches sold to house-to-house canvassers and long-term credit jewelers usually sells at or near the pre-ticketed price. The watches which are sold to the discount stores and catalog houses, however, constituting 40 per cent of total sales, or 57.1 per cent of sales of that line, are regularly sold at about 50 per cent of the pre-ticketed price.[7] There is some evidence that the jobbers and ordinary retail jewelers sell their watches at the pre-ticketed price.

Petitioners first contend that a discount store or catalog sale is not a sale "at retail" since by definition these businesses sell at a "discount." If these sales are excluded, there is no evidence that any Helbros watch sells "at retail" below the pre-ticketed price. Petitioners' argument is ingenious but not persuasive. A retail sale is the transaction by which the merchandise comes into the possession of the ultimate consumer, regardless of the title by which the vendor may choose to denominate himself.[8]

Petitioners also argue that the sales of the house-to-house canvassers and long-term credit jewelers must be included in determining the usual and regular retail price. This too is unsound. These sales are of a different line of watches, selling in a different market, at a different pre-ticketed price. In determining the usual and regular retail price,

it is necessary to consider only sales of like items in the same market.[9] But even assuming the correctness of petitioners' argument, it would not impair the validity of the Commission's determination. This would still leave *at least* 40 per cent of all sales at substantially less than the pre-ticketed price. This is sufficient to constitute fictitious pricing.[10]

There being no error, the portion of the cease and desist order appealed from is affirmed and shall be enforced.

So ordered.

---

6. The reason for the difference in mark-ups is that the house-to-house canvassers and long-term credit jewelers give credit and guarantees. The larger mark-up permits the vendor to recoup this expense while apparently rendering the service free.

7. The knowledge or intent of the manufacturer is immaterial. Gimbel Bros. v. Federal Trade Commission, 2 Cir., 116 F. 2d 578 (1941), and cases cited therein. Moreover, the evidence shows that petitioners knew of the practice of the discount stores and catalog houses to sell far below the pre-ticketed price and that, in fact, petitioners supplied them with the price at which the watches should actually sell.

8. "Retailer: * * * a merchant middleman who sells goods mainly to ultimate consumers." Webster's 3rd International Dictionary (Unabridged 1961), p. 1938. See Clinton Watch Company v. F. T. C., supra, note 4; Walling v. Consumers Co., 7 Cir., 149 F.2d 626, 630 (1945).

9. Baltimore Luggage Company v. F. T. C., supra, note 4. See also Murphy, op. cit. supra, note 3, at 427. It should be noted that the Commission order does not prohibit all pre-ticketing, but only that which is fictitious. Helbros may continue to pre-ticket any watch so long as the tag does not misrepresent the usual and regular price.

10. Baltimore Luggage Company v. F. T. C., supra, note 4, at 611 of 296 F.2d