# UNITED STATES ex rel. HOLZENDORF

## *v.*

## HAY.

---

RULE TO SHOW CAUSE WHY MANDAMUS SHOULD NOT ISSUE; MANDAMUS; POLITICAL WRONGS; SECRETARY OF STATE.

1. Under section 1274 of the code, providing that upon the filing of a petition for the writ of *mandamus*, the court "may" lay a rule requiring the defendant to show cause why the writ should not issue as prayed, the lower court has the power to refuse to lay the rule if the petition itself, and a hearing granted the petitioner,

show that further proceedings would be a waste of time and would ultimately prove futile; the word "may" in that section being used in the permissive sense and not in the sense of "must" or "shall."

2. The judiciary has no power by *mandamus* or otherwise to compel the Secretary of State, or the President, through the Secretary of State, to present and urge a claim of a citizen of this country against a foreign government to redress a wrong committed against him in such foreign country, the duty of righting such a wrong being a political one appertaining to the executive and legislative departments of the government.

3. The Secretary of State is the confidential, political agent of the President for the execution of his will in matters committed to his discretion by the Constitution; and to coerce the action of the Secretary is to attempt the coercion of the President; *following* Brown v. Root, 18 App. D. C. 239.

No. 1249.   Submitted November 5, 1902.   Decided December 2, 1902.

HEARING on an appeal by the petitioner from an order of the Supreme Court of the District of Columbia refusing to lay a rule upon the Secretary of State to show cause why a writ of *mandamus* should not issue, and dismissing a petition therefor.                                        *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Franklin H. Mackey* and *Mr. R. S. Tharin,* for the appellant.

*Mr. Ashley M. Gould,* United States Attorney for the District of Columbia, for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The appellant, Ferdinand Holzendorf, filed his petition in the Supreme Court of the District, on August 5, 1902, for a writ of *mandamus* to the Secretary of State, commanding him forthwith to institute "vigorous and proper proceedings against the Empire of Germany, and the Emperor" thereof, for the recovery of damages, on behalf of petitioner,

in the sum of $500,000. The grounds of petitioner's claims, as we apprehend them from the rather incoherent recitals of the petition, are substantially these: Petitioner, a naturalized citizen of the United States, visited Germany under a regular passport issued by the Department of State. On May 11, 1898, he was falsely imprisoned in an asylum for the insane at Dalldorf, Germany, where he was confined until July 8, 1899, and until released by decree of the court of last resort in the city of Berlin; that court finding that he had been sound in mind and body, quiet and peaceable, and not publicly dangerous since his return to Germany. The petitioner then alleged that he made application for relief to the consul-general and the ambassador of the United States to Germany, and to the executive department at Washington; and in this connection refers to an exhibit, as attached, containing that correspondence and a copy of the decree of the German court referred to in the statement of his case. This exhibit, if in fact filed below, does not appear in the transcript of the record which has been filed by the appellant in this court. The learned justice to whom the petition was submitted, declined to lay a rule upon the Secretary of State to show cause why the writ should not issue, but dismissed the petition after hearing given to the petitioner's counsel in support of his demand.

2. The first error assigned is on the refusal to lay a rule upon the defendant. Section 1274 of the code of the District, embraced in chapter XLII, under title "Mandamus," reads as follows: "Upon the filing of such petition the court may lay a rule requiring the defendant therein named to show cause, within such time as the court may deem proper, why a writ of *mandamus* should not issue as prayed, a copy of which rule shall be served upon such defendant by a day to be therein limited."

The contention is that the word "may," as used in the article quoted, is mandatory, and that it was the duty of the justice to lay the rule without regard to the merits of the petition. Practically, the appellant has sustained no injury from the failure to lay the rule, as he had his hearing, and

the action had was nothing more than would have followed the appearance of the defendant and a hearing upon a demurrer.

Whilst the signification of "may," in the construction of a statute, is ordinarily permissive, it is quite true that it will be regarded as bearing the ordinary sense of "must" and "shall," when it can be seen that the real intention of the legislature was to impose a duty and not to confer a discretionary power. In other words, whether the word shall be treated as permissive or mandatory, depends upon what may be ascertained to be the general intent and purpose of the statute. See 20 Am. & Eng. Encyc. of Law (2d ed.), 237, title "May," where the numerous cases involving the interpretation of the word in different statutes, are collated.

In accordance with what we apprehend to be the real legislative intent, apparent in section 1274, we are of the opinion that the word "may" was used therein in its permissive sense. The entire chapter of the code deals with practice or procedure, a subject that, from its very nature, must ever be left, in most of its details, to the judicial discretion. Section 1274 was intended to lay down a general rule of practice for the protection of defendants from hasty and ill-advised action in such cases, and to that extent is mandatory: the defendant must have notice and opportunity to be heard before the peremptory writ can issue. No similar reason applies in the case of the petitioner. It is of no practical consequence to him whether his petition be denied without notice to the defendant, or after, so that he have opportunity to be heard in its support, and to appeal from the denial. Appeal in either event brings up his entire case to the same extent and in the same manner. Apparently, it was the general intention in ordinary cases — an intention that will no doubt be conformed to in practice — that the petition shall not be critically scrutinized as a preliminary to laying the rule; but it does not necessarily follow that there was a further intention to compel the laying of the rule, notwithstanding it may clearly appear that the petition discloses no possible ground for relief. Such an intention ought to be

plainly expressed, and not left to inference merely. We see nothing in section 1274 that requires a reversal of the established practice of the District which was, as once stated by the court in general term, to " refuse the preliminary order, if the petition itself shows that further proceedings would be a waste of time and would ultimately prove futile." *U. S. ex rel. Warden* v. *Chandler,* 2 Mackey, 527, 534 (A. D. 1883).

3. The court did not err in dismissing the petition. Conceding the contention, for the sake of the argument, and without pausing to discuss whether it so distinctly appears in the petition, that there has been a flagrant abuse of the rights of petitioner as a citizen of the United States, by the officials of a foreign nation, yet the injury is not one of judicial cognizance in the United States. The duty of righting the wrong that may be done to our citizens in foreign lands is a political one, and appertains to the executive and legislative departments of the government. The judiciary is charged with no duty and invested with no power in the premises.

Even if the legislative department have the power, it has not, so far, undertaken to impose upon the Secretary of State the duty of presenting and urging all claims for redress in such cases that American citizens may submit to him for action.

When such duty shall have been imposed by statute, it will be time enough to consider the power to impose it, and, if ascertained to exist, then to further consider whether the performance of the duty in a given case is one that necessarily involves the exercise of discretion. Whatever duty may be owed to a citizen in such cases is, as before stated, a political one, because it involves the relations of the United States with foreign nations; and the performance of that duty in its incipient stage necessitates negotiation which is exclusively the function of the executive department. The powers of that department are vested in the President, and he it is that conducts all intercourse with foreign governments notwithstanding he may habitually act through the agency of a Secretary of State appointed for the purpose.

The latter is the confidential, political agent of the President for the execution of his will in matters committed to his discretion by the Constitution. To coerce the action of the Secretary, therefore, is to attempt the coercion of the President; and, as was said in *Marbury* v. *Madison* (1 Cr. 137, 166) : " Nothing can be more perfectly clear than that their acts are only politically examinable." See also *Brown* v. *Root,* 18 App. D. C. 239, 242.

For the reasons given, the judgment will be affirmed, with costs. It is so ordered.                              *Affirmed.*

A writ of error to the Supreme Court of the United States was prayed and allowed.