Sydney N. FLOERSHEIM, an individual
trading and doing business as Floer-
sheim Sales Company, Plaintiff,

v.

Caspar N. WEINBURGER, et al.,
Defendants.

Civ. A. No. 2048–70.

United States District Court,
District of Columbia.

Feb. 29, 1972.

Marion Edwyn Harrison, Washington, D. C., for plaintiff.

Harold A. Titus, Jr., U. S. Atty., United States District Court, Washington, D. C., for defendants.

## MEMORANDUM OPINION

PARKER, District Judge.

Plaintiff Sydney N. Floersheim, doing business as Floersheim Sales Company and National Research Company, seeks a declaratory judgment that certain forms *revised* in alleged compliance with an order of the Federal Trade Commission (FTC or Commission) are not unfair or deceptive in violation of the Federal Trade Commission Act,[1] 15 U.S.C. § 41, et seq. and, therefore, not subject to suppression by the Commission. These forms are sold by the plaintiff to third parties who in turn use them in the collection of delinquent debts and to obtain information about delinquent debtors. The plaintiff also seeks a similar determination as to certain forms intended to be used in plaintiff's own *proposed* debt collection business. He further seeks a preliminary stay of the penalty provisions of 15 U.S.C. § 45(*l*) during the pendency of this litigation. The defendants are the individual commissioners of the FTC and the United States of America (Government).

Defendants have moved to dismiss the complaint for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted, or, in the alternative for summary judgment. Opposition has been filed by the plaintiff to the motion to dismiss together with a cross-motion for summary judgment.

For the reasons set forth the Court concludes that the defendants' motion to

1. 15 U.S.C. § 45(a) (1).

dismiss should be denied as to the *revised* forms and granted as to the *proposed* forms; that the plaintiff's motion for a stay of penalties pendente lite should be denied; that the defendants' motion for summary judgment should be granted with regard to the *revised* forms for the plaintiff's existing business; and that the plaintiff's cross-motion for summary judgment should be denied.

Plaintiff's business, conceded to be virtually nationwide,

"is that of selling to creditors and to debt collection agencies certain forms—cards and envelopes—for the use of the purchaser in either (1) attempting to trace allegedly delinquent debtors (commonly called 'skip-tracer' forms) or (2) attempting to induce allegedly delinquent debtors to pay their debts . . . ."[2]

On February 5, 1968, the Commission issued an Opinion and a Cease and Desist Order against Floersheim in Docket No. 8721. Floersheim was found to have used and sold forms demanding the payments of debts as well as forms to secure information concerning delinquent debtors, that were deceptive and misleading in appearance "creating the impression that they came from the Government or some other official source or third-party, rather than from the creditor." Envelopes used and sent to debtors were found to simulate those used for official purposes by the United States Government. Skip-tracer forms were found to be deceptive because of their general appearance and similarity to Government checks. The features of other forms used by Floersheim, all set out in the opinion, were regarded as concealing their true nature and were misleading and deceptive.

On review the United States Court of Appeals upheld the Commission's findings, concluding that there was substantial evidence to support the findings that the materials were deceptive. Floersheim's contentions that the Cease and Desist Order was unreasonable, arbitrary, and capricious, amounting to a denial of due process and extending beyond what was reasonably necessary to prevent the deceptions, were rejected. The Court held that the sanctions were justified in view of the past and immediate activities of Floersheim. Judgment was entered affirming the action of the Commission and Floersheim was required to obey and comply with the Cease and Desist Order. Floersheim v. Federal Trade Commission, 411 F.2d 874, 876–878 (9th Cir. 1969), cert. denied 396 U.S. 1002, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970).

■ Two related series of incidents give rise to the present litigation. The genesis of the first occurred when the plaintiff, pursuant to 16 C.F.R. § 3.61 (a), filed a Report of Compliance alleging in detail the manner and form of his compliance with the Commission's Final Order of February 5, 1968. The cards, forms and envelopes described in and enclosed with the Report of Compliance (the *revised* forms) were intended to be used in plaintiff's *existing* business.[3] The FTC's Division of Compliance, Bureau of Deceptive Practices responded to the Report of Compliance with critical comments. Following an exchange of correspondence the FTC on April 10, 1970 formally rejected the Report of Compliance, based primarily on the objections noted by its Division of Compliance, and also for failure of the plaintiff to sign the report in accordance with the requirements of the Commission's regulations.[4] A Commission letter of April 16, 1970 expressly warned that

2. Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, at 3.

3. Plaintiff's Exhibits D, D1–D9 attached to the Complaint.

4. There is no denial that the Report, contrary to the express provisions of 16

C.F.R. § 3.61(a), was not signed by the plaintiff. But in accordance with the long-standing test in the District of Columbia, Kraft v. Board of Education for District of Columbia, 247 F.Supp. 21 (D.D.C.1965), cert. denied 386 U.S. 958, 87 S.Ct. 1026, 18 L.Ed.2d 106 (1967); United States ex rel. Holzendorf v. Hay,

". . . Any use of the materials rejected by the Commission or any other materials violative of the order may subject Mr. Floersheim to a suit for civil penalties." [5]

The second problem arises from the plaintiff's October 23, 1969 request,[6] pursuant to 16 C.F.R. § 3.61(c), for an advisory opinion concerning whether certain forms (the *proposed* forms)[7] intended to be used in the plaintiff's own *proposed* debt collection business would comply with the Order in Docket No. 8721. On March 9, 1970, following several contacts regarding this request, the Commission, through its Secretary, formally and with particularity advised plaintiff that the *proposed* forms failed to comply with the order in numerous respects. . . ."

Plaintiff then further modified these *proposed* forms and requested reconsideration of the FTC advisory comments. But, significantly, the revisions were merely descriptive; true copies of the samples were not supplied to the Commission. The Commission therefore declined to comment indicating it had "insufficient information on which to base any change in its views of the forms respondent [Floersheim] proposes to use as those views are stated in its letter dated April 10, 1970 . . . ." [8]

Because of the FTC's response, plaintiff has not embarked on the proposed business venture.

Plaintiff contends that the response to the Report of Compliance concerning the *revised* forms and the advisory opinion regarding the *proposed* forms, although both prior to any actual actions or enforcement proceedings, are final agency actions subject to and ripe for judicial review.

## REPORT OF COMPLIANCE (THE REVISED FORMS)

■ The Court agrees with the plaintiff that the FTC's rejection of a Report of Compliance is, for purposes of judicial review, final agency action.

■ The issue of pre-enforcement judicial review was recently and extensively discussed by the United States Court of Appeals for the District of Columbia in National Automatic Laundry and Cleaning Council v. Shultz, 143 U.S.App. D.C. 274, 443 F.2d 689 (1971), Circuit Judge Leventhal writing for a unanimous bench. In that case a national trade association representing several thousand members of the coin-operated laundry and dry cleaning industry sought a judgment declaring invalid a ruling of the Administrator of the Wage and Hour Division of the Department of Labor. In response to a query from the trade association which set forth three typical fact situations prevailing in that industry the Administrator indicated his opinion that the Fair Labor Standards Amendments of 1966 made the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., as amended, applicable to coin-operated laundries.

In reversing the District Court's dismissal of the action for lack of jurisdiction, the Court of Appeals concluded that

". . . We find no threshold obstacle that requires dismissal of the action before us merely because it seeks judicial review of the 'agency action' of interpretation prior to the institution of an agency action for enforcement." 443 F.2d at 704.

". . . The ultimate question is whether the problems generated by pre-enforcement review are of such a

20 App.D.C. 576, 579 (1902), the context and apparent intent of the regulation may be read to be directory, rather than mandatory, in this instance. The plaintiff, through his attorney, has submitted the report as part of the court record. Also, the Commission proceeded to consider in detail the merits of the proposed report; the failure to sign was merely a secondary basis for rejection of the report.

5. Plaintiff's Exhibit K1 attached to the Complaint.

6. Plaintiff's Exhibit B attached to the Complaint.

7. Plaintiff's Exhibits B, B1–B3 attached to the Complaint.

8. Letter of May 5, 1970, Plaintiff's Exhibit J attached to the Complaint.

nature that, taken together, they outweigh the hardship and interest of plaintiff's members and establish that judicial review of the interpretative ruling should be deferred. To some extent a balancing is involved." 443 F.2d at 702.

The Court proceeded to examine the pertinent aspects of "ripeness" and "finality" with respect to the actual facts before it. It found that "with the authoritative interpretative ruling by the Administrator heading the Wage and Hour Division the agency's interpretative action has come to an end," 443 F.2d at 701; that "[t]he authoritative interpretation of an executive official has the legal consequence, if it is reasonable and not inconsistent with ascertainable legislative intent, of commanding deference from a court that itself might have reached a different view if it had been free to consider the issue on a blank slate," 443 F.2d at 697; and that "the Administrator's interpretation, . . . ., has the characteristic not only of securing 'expected compliance' . . . , but of possibly stimulating double damage suits by employees who need not fear that they would be at odds with the Government officials involved." 443 F.2d at 697.[9] Proceeding from those findings the Court concluded that "the sound course is to accept the ruling of a board or commission, or the head of an agency, as presumptively final," 443 F.2d at 701; and that pre-enforcement judicial review of the Administrator's ruling was appropriate.

Judge Leventhal cautioned that "The general presumption of judicial reviewability, and the modern rulings implementing that approach, are not to be understood as projecting a doctrine of judicial intervention as to administrative rulings or declarations on problems that are hypothetical rather than actual." 443 F.2d at 699.

But he distinguished the facts before him, observing that

". . . The plaintiff Association did not present to the Administrator a hypothetical set of facts, rather it set out the actual and present operations of its members. It did not seek to learn whether a proposed course of conduct would violate the law." 443 F.2d at 699.

The facts presented in this case, considered in light of the balancing approach adopted in *Shultz*, and "pragmatic considerations, particularly those relating to the institutional relationships between the courts and the administrative agencies," Medical Committee for Human Rights v. Securities and Exchange Commission, 139 U.S.App.D.C. 226, 234, 432 F.2d 659, 667 (1970), are sufficiently within the ambit of the *Shultz* criteria to make pre-enforcement judicial review appropriate and necessary.[10] The Commission's April 10, 1970 letter formally rejecting plaintiff's proposed Report of Compliance was the last required decision by the highest authority responsible for determination of compliance.[11] Conformity with the Commission's ruling is expected, and if penalties are sought to be assessed they are considered to have begun accruing once the Cease and Desist Order became statutorily final, 15 U.S.C. § 45(l), and after the expiration of the period granted by the Commission to remove the offending items from the marketplace. Courts should not be "powerless if . . . an order . .

---

9. The Court also found that the opinion rendered by the Administrator "was rendered on a broad legal question affecting an entire industry group . . . ." 443 F.2d at 702. But that factor is not exclusively controlling.

10. It might also be argued that at the Report of Compliance state of its concern, the FTC is so meaningfully involved in the plaintiff's decision that review is appropriate. Independent Broker-Dealers' Trade Association, et al. v. Securities & Exchange Commission, et al., 142 U.S. App.D.C. 384, 442 F.2d 132 (March 4, 1971) as amended May 18, 1971, cert. denied 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 57 (October 12, 1971).

11. There are no allegations of changed conditions of law or fact or considerations of public interest which might form the basis for reopening the proceedings. 16 C.F.R. § 3.72.

still is considered to be so arbitrary as to be unlawful and the Government pursues a policy of accumulating penalties while avoiding a judicial test by refusing to bring action to recover them." United States v. Morton Salt Co., 338 U.S. 632, 654, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950). See also, St. Regis Paper Co. v. United States, 368 U.S. 208, 226, 227, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961).

Admittedly, the merits of the issues present a situation that looks to the future. But the situation is not so hypothetical or so speculative as to be inappropriate for judicial review. Helco Products Co., Inc. v. McNutt, 78 U.S.App. D.C. 71, 137 F.2d 681 (1943), relied upon by the defendants and discussed in *Shultz*, is distinguishable. In *Helco*, the plaintiff sought an advisory opinion from the Food and Drug Administration of the Federal Security Agency whether its proposed shipments in interstate commerce of white poppy seeds dyed blue would constitute an illegal adulteration within the provisions of the Federal Food, Drug, and Cosmetic Act, 21 U.S. C.A. § 301 et seq. The Commissioner of Food and Drugs indicated that such action would be a violation, and judicial review was subsequently denied. But in that case the question had not been submitted to the Commissioner's superior, the Federal Security Administrator; and there had been no hearing at which all the factual and technical as well as legal aspects could be examined.

On the other hand, in the case before this Court the sole issue is the alleged *continuing* impropriety of a business which the FTC has already examined. There has been an exhaustive study of all of the factual and technical issues culminating in the Cease and Desist Order.

The Commissioners and their subordinates need make no further analysis to determine what qualities are deceptive in order to decide if the petitioner's offer of compliance avoids those elements. There is no possibility of premature judicial interference with administrative analysis or fact finding; the issue is simply the legal adequacy of the FTC's decision. Abbott Laboratories et al. v. Gardner et al., 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Frozen Food Express v. United States et al., 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956). The Commission, having completed all of its procedures except the technicality of seeking an enforcement order, has issued what may have the effect of a supplemental Cease and Desist Order without the benefit to the petitioner of judicial review. This is agency action for which there is no adequate remedy. Administrative Procedure Act, 5 U.S.C. § 704.[12]

This Court also believes that the public interest is more effectively served if introduction of deceptive devices and practices into the marketplace before their legality can be determined is discouraged. Regina Corporation v. F. T. C., 322 F.2d 765, 768 (3rd Cir. 1963), rehear. denied 1963, as amended 1963. Thus if a petitioner can seek prompt judicial review of a rejected Report of Compliance delays in prosecution for contempt may be avoided; and failure of a petitioner to seek prompt judicial review would be evidence of bad faith in a proceeding for assessment of penalties.

 Nor are fears of overburdening the courts with requests for review of half-hearted attempts at compliance justified. 16 C.F.R. § 3.61(b) provides, in pertinent part,

12. Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) and Anheuser-Busch, Inc. et al. v. Federal Trade Commission, 359 F.2d 487 (8th Cir. 1966), cited by the defendants, involved failures to comply with subpoenaes pursuant to section 10 of the FTC Act, 15 U.S.C. § 50. The courts found that there was an adequate remedy and penalties could be stayed pending litigation. Al-

though the action question of pre-enforcement review of the rejection of a proffered FTC Letter of Compliance was not reached because no rejection had yet occurred, the opinion of Chief Judge Caleb M. Wright in Continental Baking Company v. Dixon et al., 283 F.Supp. 285 (D. Del.1968) strongly suggests support of petitioner Floersheim's request for review.

". . . that . . . the filing of a report which does not evidence full compliance with the order, does not in any circumstances suspend or relieve a respondent from his obligation under the law with respect to compliance with such order. An order of the Commission to cease and desist becomes final on the date and under the conditions provided in . . . the Federal Trade Commission Act . . . and . . . the Clayton Act, as amended. . . . Any person, partnership or corporation against which an order to cease and desist had been issued who is not in full compliance with such order on and after the date provided in these statutes for the order to become final is in violation of such order and is subject to an immediate action for civil penalties."

The Court believes that this regulation accurately reflects the intent of §§ 45(g) and (l)[13] of the Act with respect to what constitutes finality for purposes of assessing penalties. Thus judicial review of a rejected Report of Compliance must be taken at the petitioner's own risk. The strong public interest in this area requires that possible penalties not be stayed pending such litigation in order to avoid encouraging frivolous suits for purposes of delay. Of course court administrative delays and the plaintiff's good faith on the one hand, and, as in this case, the unreasonableness or frivolousness of plaintiff's grounds for review on the other hand, are factors which a court may consider in assessing penalties. United States v. H. M. Prince Textiles, Inc., 262 F.Supp. 383 (S.D.N.Y. 1966).

This Court also notes that the administration of justice might be better served if, in the future, review of a rejection of a Report of Compliance were confined, when venue is obtainable, as a matter of judicial discretion to the jurisdiction which originally reviewed the cease and desist order. See dicta in Continental Baking Company v. Dixon, 283 F.Supp.

285, 288 (D.Del.1968). In fact that court of appeals has *"exclusive"* jurisdiction to "affirm, enforce, modify, or set aside orders of the Commission." 15 U.S.C. § 45(d) (Emphasis added.)

But our Circuit Court, in dicta in Independent Broker-Dealers' Trade Association et al. v. SEC, *supra*, considered a similar problem with regard to direct review by the court of appeals under the Securities Exchange Act, 15 U.S.C. § 78 (y) (1964). It was there indicated that review by the district court would be sustainable, *inter alia*, under the Administrative Procedure Act, providing for review of "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704 or "[i]f the Act should be given narrow reading [with exclusive jurisdiction in the courts of appeals], . . . by reference to the general equity jurisdiction of the District Court." 142 U.S.App.D.C., at 395, n. 18, 442 F.2d at 143, n. 18. The Elmo Division of Drive–X Company, Inc. v. Dixon et al., 121 U.S.App.D.C. 113, 348 F.2d 342 (1965), rehear. en banc denied 1965. That same situation justifies review of the revised forms.

### ADVISORY OPINION (THE PROPOSED FORMS)

■■ FTC advisory opinions pursuant to 16 C.F.R. § 3.61(c) usually differ significantly from responses to Reports of Compliance since they are based only on requests "submitted in writing" and "other information available to the Commission." Neither hearings nor appeals to the Commission or to the courts of orders stemming from hearings are provided. It would be improper for this Court to review advisory opinions in such a context for it would be compelled to undertake the exhaustive efforts reserved for administrative energies and expertise. Nor would an exception be appropriate for a case such as the present "where the same or substantially the same course of action . . . has been the subject of a current . . . order,

13. 15 U.S.C. §§ 45(g) and (e).

or decree initiated or obtained by the Commission. . . ." [14] Unlike the situation presented by Reports of Compliance, there are no factors to discourage overburdening Courts with frivolous actions. Indeed, as the facts of this case demonstrate, many ingenious guises can be developed to alter the form of a business without changing its substance, thus circumventing FTC scrutiny.[15] Accordingly, the motion of the defendants to dismiss the complaint should be granted as to the so-called *proposed* forms.

### THE MERITS

This Court's inquiry into the merits must be distinguished from review of the Cease and Desist Order. That Order has been affirmed and enforced by the appropriate court of appeals, Floersheim v. Federal Trade Commission, supra. Review here is confined to a determination whether substantial evidence on the entire record, Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Giant Food Inc. v. Federal Trade Commission, 116 U.S.App.D.C. 227, 233, 322 F.2d 977, 985 (1963), petit. for rehear. en banc denied 1963, petit. for rehear. before the Division denied, 1963, dismissed pursuant to Rule 60 of the Supreme Court, 376 U.S. 967, 84 S.Ct. 1121, 12 L.Ed.2d 82 (1964), supports the Commission's response to the Report of Compliance so that the response cannot be said to have been arbitrary or clearly wrong. Giant Food Inc. v. F. T. C., supra; Kalwajtys v. F. T. C., 237 F.2d 654, 65 A.L.R.2d 220 (7th Cir. 1956), cert. denied, 352 U.S. 1025, 77 S.Ct. 591, 1 L.Ed.2d 597 (1957).

In conducting such a review, several principles, particularly appropriate to this case, must be considered. If the questioned item or practice is capable of two meanings, one of which is false, it is misleading and prohibitive even though the term might have performed a different and lawful function. It is the over-all impression on the consumer that is crucial. Giant Food Inc. v. F. T. C., supra, 116 U.S.App.D.C. at 231, 235, 322 F.2d at 981, 985; Continental Wax Corporation et al. v. F. T. C., 330 F.2d 475, 477 (2d Cir. 1964); Rhodes Pharmacal Co., Inc. v. Federal Trade Commission, 208 F.2d 382, 387 (7th Cir. 1953), rehear. denied 1954, rev'd in part, 348 U.S. 940, 75 S.Ct. 361, 99 L.Ed. 736 (1955). See also United States v. Ninety-Five Barrels, etc. of Vinegar, 265 U.S. 438, 443, 44 S.Ct. 529, 68 L.Ed. 1094 (1924). And the Federal Trade Commission Act was intended to protect not just the sophisticated, Giant Food Inc. v. F. T. C., supra, 116 U.S.App.D.C. at 238, n. 13, 322 F.2d at 982, n. 13; Helbros Watch Company, Inc. et al. v. Federal Trade Commission, 114 U.S.App.D.C. 63, 64, n. 4, 310 F.2d 868, 869, n. 4 (1962), cert. denied 372 U.S. 976, 83 S.Ct. 1110, 10 L.Ed.2d 142 (1963), rehear. denied 374 U.S. 857, 83 S.Ct. 1866, 10 L.Ed.2d 1083 (1963); but rather "that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze but are governed by appearances and general impressions." Florence Mfg. Co. v. J. C. Dowd & Co., 178 F. 73, 75 (2d Cir. 1910); Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141

14. 16 C.F.R. § 3.61(c) (2). Additionally, plaintiff "conceded" that "even as to his proposed new business, the matter at issue was . . . within the jurisdiction of the FTC [cease and desist] Order." Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, at 5.

15. Even if this Court were to approve, as a general rule, review of FTC advisory opinions, such review would be appropriate only as to the Commission's letter of March 9, 1970 commenting unfavorably on the request of October 23, 1969. Plaintiff's modified forms proposed in the letter of March 24, 1970 merely described alleged changes with no actual samples supplied to the Commission. In this case the most crucial factor in evaluating the proposed forms is their *visual* impact. The Commission correctly refused to comment because of insufficient information.

**958**

(1937); Helbros Watch Company, Inc. v. F. T. C., *supra*; Giant Food Inc. v. F. T. C., *supra*.

Furthermore, deference must be shown to the experience and expertise of an administrative agency when reviewing its application of relevant statutes. Federal Trade Commission v. Colgate-Palmolive Co. et al., 380 U.S. 374, 385, 85 S.Ct. 1035, 13 L.Ed.2d 904 1965); Atlantic Refining Co. v. Federal Trade Commission, 381 U.S. 357, 85 S.Ct. 1498, 14 L.Ed. 2d 443 (1965).

The Commission's Final Order in this proceeding set forth in detail the various practices found to be deceptive.[16] Thereafter, petitioner filed his Report of Compliance [17] enclosing samples of the revised forms and envelopes. Black and white xeroxed copies of these exhibits appear as Exhibits D1–D9 attached to the Complaint.

The Commission's Bureau of Deceptive Practices, Division of Compliance found only one exhibit acceptable.[18] That essentially negative response and grounds therefor were affirmed in later correspondence to the plaintiff from the Commission.[19]

Review of the sample forms and envelopes compels the conclusion that each of the negative responses of the Commission was more than justified. The immediate and dominant impression to this Court is that of mailings on behalf of or authorized by the Government. The color, shape, format, size and combination of type, and choice and arrangement of words all convey a single deceptive impression—that the Government or its authorized agency demands prompt payment of the debt. This is compounded by a subtle emphasis on the Washington, D. C. return address.

It appears unlikely that little less than the combined elimination of all of the offending characteristics can undo the prohibited effect. The Court has no

doubt that a good faith effort could produce numerous reasonable alternatives; but the evidence in this record suggests, on the contrary, a deliberate attempt to circumvent and delay compliance with the orders of the Commission as enforced by the Federal Courts.

Accordingly, the motion of the defendants for summary judgment must be granted with regard to the so-called revised forms.

Counsel for defendants shall submit an appropriate order within five (5) days.

16. Plaintiff's Exhibit A attached to the Complaint.

17. Plaintiff's Exhibit D attached to the Complaint.

18. Plaintiff's Exhibit E attached to the Complaint.

19. Plaintiff's Exhibit I attached to the Complaint.