OPINION OF THE COURT
James D. Benson, J.
This action for an injunction under 15 USC § 1664 (Truth in *291 Lending Act), General Business Law article 22-A, and CPLR 6301 enjoining Terry Buick, Inc. from continuing to advertise the terms for credit on vehicles it is selling in an illegal, false and deceptive manner is determined as follows:
In this action, the State of New York sues a retail automobile dealer for a judgment enjoining it from continuing several advertising practices which it claims violate General Business Law §§ 350 and 350-a as well as 15 USC § 1664 (d) and Regulation Z (12 CFR 226.24) (Truth in Lending Act). The thrust of the claim is that the defendant did not disclose its payment and financing terms in the sale of automobiles "clearly and conspicuously”. At the heart of the controversy are two advertising practices in which the defendant (1) displayed large signs in its showroom window which read "no money down” "$99 "mo” and (2) the announcement of the actual terms of each sale on 2!4 inches by 3% inches stickers, legible only upon close inspection, attached to the windshields of vehicles offered for sale.
The proof was clear that the defendant operated an automobile dealership business on Route 9, a very busy public highway in Poughkeepsie. At the time of the events of which the plaintiff complains, the defendant displayed large yellow signs across the street-side face of its building in block letters which read "no money down instant credit” and in the showroom window beneath it, "$99/mo”. The windshields of many of the used cars offered for sale in the yard also bore a large painted sign which read "$99/mo or $199/mo”. The record also shows that the defendant attached small stickers to the windshields of each car offered for sale, not legible from the highway, which stated the terms of the sale. These announcements showed the stock number of the car, the price, the down payment, the term in months and the average interest rate applied to installment payments. It was not clear whether these stickers were attached before or after the litigation was commenced.
On June 29, 1987, Terry Buick stipulated that it would remove, forthwith, the signs on the building which read "no money down” and "$99/mo”.
The court viewed the defendant’s place of business with the attorneys and examined a number of the windshield stickers. They were legible only upon inspection from a distance of a few feet and set forth the financial details of each offer. Examination of the stickers showed that almost every offering *292 required a down payment to obtain $99 per month financing. Other used cars had only "$99/mo” painted on their windshields. According to the testimony of one witness, the salesman did not know the price of several of such cars. He testified that no cars were offered for sale for $2,000 down and $99 per month.
The plaintiff relied heavily upon the testimony of an undercover agent, a woman in the employ of the Attorney-General who went to the defendant’s place of business in the guise of a prospective purchaser and engaged a salesman in conversation about the cars. She recorded the conversation secretly and offered the tape, which the court admitted into evidence. The plaintiff emphasized in argument a statement which the salesman made to the plaintiff’s agent in which he admitted that the purpose of the advertising was to capture peoples’ attention as they drove by and get them into the dealership. The court has disregarded this testimony in this decision because it appears that the automobile salesman’s authority did not permit him to make such an admission. (Eastern Dist. Piece Dye Works v Travelers Ins. Co., 234 NY 441, 455; Loschiavo v Port Auth., 58 NY2d 1040.) There was no proof that the salesman had been authorized to make admissions on the defendant’s behalf. His hearsay statement is not competent evidence. (Maggio v Mid-Hudson Chevrolet, 34 AD2d 567.)
The plaintiff called three witnesses. It called the undercover investigator, referred to above, a legal aide at the Attorney-General’s office named Luposello and an Assistant District Attorney of Dutches County named Durant. Luposello testified that he had seen the advertising and reported it to his office as a possible violation of truth in lending. He saw the advertising and took photographs later, which were admitted in evidence. Durant testified that he had been shopping for a car. He stopped at Terry Buick, met a salesman and explained to him that he wanted to buy a car, pay $99 a month and pay as little down as possible. He said that the general advertisements attracted him, and that he asked how he "would be able to pay $99 a month by either placing no money down or very little down”. He learned after some delay that he would have to pay down several thousand dollars in order to pay $99 a month. He testified that he read "no money down”, "instant credit” and "$99 a month” as being in conjunction with one another.
The truth in lending statutes which govern the defendant’s conduct are 15 USC § 1664 (d) and New York General Busi *293 ness Law §§ 350 and 350-a. The Federal statute is amplified by Regulation Z (12 CFR 226.24). State courts have concurrent jurisdiction to enforce the Federal statute. (Public Loan Co. v Hyde, 47 NY2d 182; Matter of State of New York v Doro Chartours, 72 AD2d 872.)
Section 1664 (d) reads as follows:
"If any advertisement * * * states the amount of the down-payment, if any, the amount of any installment payment, the dollar amount of any finance charge, or the number of installments or the period of repayment, then the advertisement shall state all of the following items * * *
"(1) The downpayment, if any.
"(2) The terms of repayment.
"(3) The rate of the finance charge expressed as an annual percentage rate.”
The regulation adopted pursuant to the statute requires that "The creditor shall make the disclosures required by this sub-part clearly and conspicuously”. (12 CFR 226.17.)
General Business Law § 350 reads: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.”
Section 350-a of that law reads: "The term 'false advertising’ means advertising, including labeling, which is misleading in a material respect; and in determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.”
The court’s inspection of the defendant’s place of business and its advertising material showed beyond question that the announcement signs were a "come on” designed to lure the eager seeker of a good deal. It also showed that "what you see is not what you get”. We have not given the testimony of the undercover agent much weight. It was a contrived tactic practiced upon a relatively guileless salesman by a young woman who pretended to be a purchaser. Her testimony is not necessary, however, to convince the court that defendant’s public announcement of its deals fell far short of the candid display which the law requires. The law requires full disclo *294 sure described in the plain language of the statute. A look at the defendant’s advertising scheme leads directly to the conclusion that it was designed to attract customers by half truths or falsity. No customer could buy a car on the terms boldly announced on the face of the building. The defendant’s intentions did not have to be explained by testimony. No undercover agent was needed to obtain admissions. The message spoke for itself and could not be misread. It was "misleading in a material respect”.
Truth in lending laws were not adopted for the canny shopper. They were made for the gullible and those easily led. The Court of Appeals decided in Guggenheimer v Ginzburg (43 NY2d 268, 273) that, "In weighing a statement’s capacity, tendency or effect in deceiving or misleading customers, we do not look to the average customer but to the vast multitude which the statutes were enacted to safeguard — including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions (cf. People v Volkswagen of Amer., 47 AD2d 868; Floersheim v Weinburger, 346 F Supp 950, 957).” The plaintiff was not required to show that anyone had been deceived or that the advertising had injured anyone. It met its burden by showing its misleading effect.
The defendant’s violation of Federal and New York State truth in lending laws has been demonstrated. Defendant claims, however, that injunction is not an available remedy because the plaintiff has not shown irreparable damage.
Traditional concepts of irreparable damage which apply to private parties do not govern this public interest field. General Business Law §§ 350-a — 350-d preserve the rights of parties in litigation and assure the continued application of Executive Law § 63 (12). The latter statute grants to the Attorney-General the power to apply to the Supreme Court for an order enjoining fraudulent or illegal acts. The irreparable injury to be enjoined is an injury to the public, which need not be focused lipón an individual to be actionable. The restraint of a false appeal to the public-at-large justifies the maintenance of the action.
The motion for an order granting a preliminary injunction enjoining the defendant Terry Buick, Inc. from continuing to advertise the terms for credit on vehicles it is selling in an *295 illegal, false and deceptive manner is granted. Submit order on notice in accordance with the foregoing decision.
The attorneys for the parties are directed to appear at a pretrial conference to be conducted in this part on November 4, 1987 at 9:30 a.m. to establish the date and time of trial of the issues of permanent injunction, penalties and costs.